PEOPLE *v.* ADAMS.

1. CRIMINAL LAW—REOPENING CASE—RAPE—PATERNITY—EVIDENCE.
   In prosecution for statutory rape, refusal to reopen case to admit additional testimony to show that another man was the actual father of the baby of complaining witness *held*, not clearly shown to have been error (Act No. 328, § 520, Pub. Acts 1931).

2. SAME—STATUTORY RAPE—CHARACTER—COMMENT.
   Where a defendant in a prosecution for statutory rape advanced as a defense his good character, he was subject to having his character thereafter scrutinized and spoken of as far as testimony would warrant (Act No. 328, § 520, Pub. Acts 1931).

3. SAME—STATUTORY RAPE—ARGUMENT OF PROSECUTOR—PREJUDICE.
   In prosecution for statutory rape wherein it appeared defendant and the mentally deficient mother of complaining witness had been living in a common-law marital relationship, prosecutor's argument in which he accused them of the unproven crime of living in adultery *held*, not justified, prejudicial and reversible error (Act No. 328, § 520, Pub. Acts 1931).

Appeal from Recorder's Court of the City of Detroit; Stein (Christopher E.), J. Submitted April 12, 1945. (Docket No. 72, Calendar No. 42,914.) Decided May 14, 1945.

John Adams was convicted of rape. Reversed and new trial granted.

*Asher L. Cornelius,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,*

Prosecuting Attorney, and *Michael A. Guest*, Assistant Prosecuting Attorney, for the people.

REID, J.   The defendant was convicted of rape on trial by a jury in recorder's court of the city of Detroit.  From the sentence imposed defendant obtained leave from this Court to appeal.

Defendant claims that the verdict was against the weight of the evidence; that there was no competent evidence to show that defendant committed the offense on the date alleged; that the trial court was in error in overruling defendant's motion for a new trial, that the trial court was in error in refusing to permit defendant to reopen the case after both parties had rested; and further, that the prosecuting attorney committed reversible error in his argument by referring to the defendant as guilty of an unproven crime not involved in this case.

The defendant, a colored man of the age of 47 years, was charged with committing the offense of "statutory rape" * on or about March 8, 1944, against Ollie Mae Robbins, of the age of 13, she being the daughter of Mary Jane Robbins, with whom the defendant lived in common-law relationship.   There was some showing that Mary Jane Robbins, the mother, was mentally deficient.

The girl, Ollie Mae Robbins, testified positively to the offense.  She failed to fix the date precisely but said it was in March, 1944, the first part.  She further testified to a similar act in January, 1944, or during the Christmas time of 1943, as the first of such acts.

Dr. Helen Tasker, a Wayne county medical examiner, testified that she examined Ollie Mae Robbins on March 14, 1944, that the examination showed

---

* See Act No. 328, § 520, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–520, Stat. Ann. § 28.788).—REPORTER.

that the girl's hymen was ruptured and the uterus was enlarged to the size of a seven to seven and one-half month's pregnancy, and that the girl was then pregnant. No testimony is pointed out to us to rebut the inference that the child born May 14, 1944, was fully developed, except failure of a witness to note by her appearance that the girl was pregnant. If the child was in fact fully developed, Ollie Mae's testimony that defendant first had intercourse with her in January, 1944, or Christmas time, 1943, and that she had not had intercourse with any other man, must be incorrect.

It is the theory of defendant that a young colored man now in the army is the actual father of the baby. After the testimony had been closed, defendant sought to reopen the proofs and recall and further cross-examine Ollie Mae Robbins as to her relations with this man and to show that he had written her a letter. But the address on the envelope had evidently been changed and the court after hearing statements about the matter refused to reopen the case to admit additional testimony. It is not clear that error was thereby committed.

The prosecution claims the testimony that the act occurred in the first part of March, 1944, is sufficient proof of a date alleged as "on or about March 8, 1944." See 3 Comp. Laws 1929, § 17259 (Stat. Ann. § 28.985 [2]), and 3 Comp. Laws 1929, § 17265 (Stat. Ann. § 28.991).

Ollie Mae's testimony failed to point out any event or circumstance that would indicate to the mind of any other person on what day the act occurred among the 15 days in the first part of March. See *Turner* v. *People,* 33 Mich. 363, 376.

During March, 1944, the defendant was living in the house where the act was alleged to have occurred, the little girl's mother was present keeping

house as common-law wife, and the little girl was also living there. The defendant was absent during the work hours of each day at the Ford plant. The mother testified that she did not see anything unusual going on. Two witnesses for defendant testified that they were also living in the same house and their testimony would show that the act did not occur on March 8, but evidently they were not prepared to testify similarly about the other 14 days in the first part of March. The defendant was at a great disadvantage in preparing his defense because of the uncertainty of the prosecution's proof.

In *People* v. *Lummis,* 260 Mich. 170, a conviction was sustained where the offense was alleged to have occurred on or about February 1, 1931, and the prosecutrix testified to a series of acts covering two years, once or twice a week up to February 1, 1931. As to that date she said she had intercourse with the defendant ''along about that time,'' which at least comes nearer to proving the date alleged than the testimony in the instant case. On a new trial of the instant case, it is to be expected that the prosecution will identify the occasion more clearly.

Defendant also complains of the following statements by the assistant prosecuting attorney in his argument to the jury:

''He said something about character. What character may mean to one individual may not have the same meaning to another individual. What is meant by character where people live like animals without the sanction of the law, just live at their will and pleasure, like this defendant did with this demented woman? Would a man of good character do that, live in open adultery with a woman?''

The prosecution claims as justification of said statements the following excerpts from the testi-

mony of the mother of the girl on examination by the assistant prosecuting attorney:

"*Q.* What is your name?

"*A.* Mary Jane Robbins. I am married. * * *

"*Q.* And do you know John Adams, the defend-, ant in this case?

"*A.* Yes, I know him.

"*Q.* Did you ever live with him, common-law husband and wife?

"*A.* Say what?

"*Q.* Did you ever live with him as husband and wife?

"*A.* Yes, I used to live with him as husband and wife."

The assistant prosecutor drew the inference from the quoted testimony that the witness had testified to lewd and lascivious cohabitation with defendant. The defendant denies that such meaning is to be attached to the testimony and claims that there is no evidence of lewd and lascivious cohabitation.

In this particular case the witness, Caparaotta, testified:

"I am a common-law. By that I mean I have been staying with a girl three years without being married to her."

We may infer that the expression, common-law husband and wife, is used by some people as a euphemism to indicate lewd and lascivious cohabitation and not a lawful marriage relation.

Defendant argues that the quoted words of the assistant prosecutor were prejudicial. He had advanced as a defense his good character. He was subject to having his character therefore scrutinized and spoken of as far as testimony would warrant. The prosecution would also excuse the quoted argument on the ground that the prosecuting attorney

was provoked by defendant's argument. The excerpt quoted shows that the words objected to were in answer to defendant's argument as to good character. There appears no reason for the prosecutor's being excessively perturbed. His argument must be considered deliberate. We conclude that the testimony given did not justify the use of the quoted words by the assistant prosecutor. There was no testimony to show any previous ill conduct on the part of the defendant.

The question as to whether the relationship between these parties was a lawful marriage at common law or whether it was an unlawful relationship was not a matter for the prosecutor to decide as upon his personal judgment. The prosecutor elicited the testimony from the woman as a witness and dropped the subject without making clear the very point on which he so dogmatically argues to the jury. The testimony could create a suspicion as to the legality of the relationship of defendant and the woman. That is the most that may be said in favor of his argument. There was nothing in the answers of the witness that would directly and expressly point out the sinister interpretation that the prosecutor relies upon. He speaks of her as a half-demented woman but did not ask for an explanation of her answer as to her name. The argument by the prosecutor accused defendant of an unproven crime.

Ollie Mae Robbins gave inconsistent statements on important matters. She is the prosecution's sole witness to the act complained of. We must not accept as valid any statement that the jury would have convicted the defendant regardless of the erroneous argument. In view of all the circumstances we regard the argument as reversible error. See *People* v. *Gengels,* 218 Mich. 632, 640.

The judgment appealed from is reversed. The verdict should be set aside and a new trial granted. The case is remanded to the lower court to make such orders and to take further proceedings in accordance with this opinion.

Starr, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Boyles, JJ., concurred.