PEOPLE v WILLIAMS

1. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—INSTRUCTIONS TO JURY.

Although an instruction to the jury that the court had held a separate hearing to determine the voluntariness of a statement and had found the statement to be voluntary was not error where defense counsel made no objection to the court's instruction either when it was given, at the time the statement was admitted, or when it was incorporated into the court's formal instructions to the jury, the better practice would be not to inform the jury that the statement was found to be voluntary at a prior hearing, but rather to admit the statement and advise the jury that (1) they should find if it was made, and (2) if they so find, they should decide if the statement is true.

2. CRIMINAL LAW—AIDING AND ABETTING—INSTRUCTIONS TO JURY.

Instructions to the jury on aiding and abetting were not error where, from the evidence, the jury could infer joint action on the part of one defendant with the other defendant and where defense counsel failed to object to the charge.

3. CRIMINAL LAW—EVIDENCE—CIRCUMSTANCES OF ARREST.

It was not prejudicial error for the prosecutor in a case involving carrying an unlicensed handgun in a motor vehicle to make reference to the fact that a defendant was carrying a substantial sum of money and was initially arrested for investigation of armed robbery, although he was never charged for that offense, where defense counsel neither objected to the testi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 734.
  Voluntariness of confession admitted by court as question for jury. 85 ALR 870.
[2] 53 Am Jur, Trial § 647.
[3] 29 Am Jur 2d, Evidence §§ 288, 623.
  56 Am Jur, Weapons and Firearms § 9 *et seq.*
[4, 5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[6] 21 Am Jur 2d, Criminal Law § 292.
  47 Am Jur 2d, Jury §§ 195–212.
[7] 21 Am Jur 2d, Criminal Law § 536.

mony regarding such facts nor protested the mention of the initial arrest for armed robbery, but in fact used such evidence in his closing argument; the testimony had probative value because possession of the money supplied a motive for defendant to carry a gun.

4. CRIMINAL LAW—APPEAL AND ERROR—EVIDENTIARY QUESTION.

The Court of Appeals will not, in the absence of manifest injustice, review evidentiary questions not raised in the trial court in a criminal case.

5. CRIMINAL LAW—PROSECUTOR'S REMARKS—PRESERVING QUESTION.

Failure to object to a prosecutor's improper jury argument precludes review of it in the absence of a showing of manifest injustice.

6. JURY—CRIMINAL LAW—VOIR DIRE.

It was not prejudicial error for a defendant to be three times tried before separate juries drawn from the same panel, once in a separate case, once on the present charge by a jury whose members could not agree on the verdict, and the third time on the present charge when he was convicted, where the panel consisted of 258 members, the first jury in the present charge had been sequestered, and no specific instance was shown in which a member of a previous jury had spoken to the prospective jurors to be brought in for voir dire in the second trial on the present charge, and where before voir dire the court inquired if any member of the panel had ever heard of the parties involved or had any prior knowledge of the case, and where defendant failed to exercise all of his peremptory challenges and expressed a satisfaction with the jury.

7. CRIMINAL LAW—STATUTES—SENTENCE—MINIMUM SENTENCE.

A minimum sentence of 4-1/2 years exceeds 2/3 of the 5-year maximum provided by statute for conviction of carrying an unlicensed handgun in a motor vehicle; the Court of Appeals modifies such a minimum sentence to 2/3 of the maximum (MCLA 750.227; GCR 1963, 820.1[7]).

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 January 3, 1973, at Detroit. (Docket No. 13334.) Decided March 30, 1973.

Willie Lee Williams was convicted of carrying

an unlicensed handgun in a motor vehicle. Defendant appeals. Affirmed with sentence modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William H. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Edward R. Wilson,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and ADAMS,* JJ.

PER CURIAM.

### Statement of Facts

Early on the morning of June 16, 1971, Detroit police officers stopped a car driven by defendant, Willie Lee Williams, because the vehicle's tail lights were working improperly. As they approached the car, one noticed the passenger, Vincent Sayles, reach under his seat. The policeman ordered Sayles out of the automobile and removed a loaded .32-caliber pistol from beneath the seat. Defendant Williams then exited the car, revealing a .38-caliber pistol on the front seat where he had been sitting. A subsequent search of defendant disclosed $1350 and ten live rounds of .38-caliber ammunition.

On July 15, 1971, defendant was arraigned on an information charging that he and Sayles had violated MCLA 750.227; MSA 28.424 by carrying an unlicensed handgun in a motor vehicle. Defend-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ant's first trial commenced on November 16, 1971 and terminated on November 19, 1971 when the jury was discharged because it was unable to agree upon a verdict. A new jury was impaneled on November 19 and subsequently convicted defendant, while finding codefendant Sayles not guilty. From his conviction and sentence of 4-1/2 to 5 years' imprisonment, defendant now appeals as of right.

### *Issue I*

*After conducting a hearing in accordance with* People v Walker, *374 Mich 331 (On Rehearing, 1965), and determining that a statement was voluntarily made, was it prejudicial error for the trial judge to instruct the jury that he had considered the statement and had determined that it was voluntary?*

A *Walker* hearing was held outside the presence of the jury to determine the voluntariness of a signed statement which defendant allegedly gave to Detective Sergeant Ivor Williams of the Detroit Police Department after defendant's arrest. Sergeant Williams testified that after he had advised defendant of his rights and had had defendant sign a document indicating that he had been so advised, defendant stated that he borrowed the guns from a friend and that the money discovered on his person was saved from his pension income and race track winnings. Officer Williams recorded this information and had defendant sign it. Defendant testified at the *Walker* hearing that when he signed the statement there was no writing under the word "remarks" on the paper, although the top portion of the paper had been filled out. He denied that he had claimed to have borrowed the guns from a friend.

After the trial judge had ruled the statement voluntary and Sergeant Williams had testified before the jury as to the contents of the statement, the court addressed the jury as follows:

"The court has held a separate hearing outside the presence of the jury to determine the voluntary nature *of the statements made by the defendant Willie Lee Williams to Sergeant Ivor Williams.* That is a question of law which was decided by the court. The jury has two factual questions to determine. One, was a statement actually made as related by Sergeant Williams. Two, if the statement was made, is it true. Now, those are the two things the jury has to decide." (Emphasis added.)

In his closing instructions, the trial judge again discussed the testimony of Sergeant Williams concerning the statement made by defendant. He informed the jury that "the court has determined in a separate hearing that the statement was voluntary", and requested the jurors to determine only two questions relating to the statement— whether or not it was actually made and, if it was made, whether it was true. The court additionally cautioned the jury they were the "sole judges of the credibility of the witnesses".

*People v Walker,* 374 Mich 331, 337–338 (On Rehearing, 1965), holds that the question of the voluntariness of a confession is solely a matter for determination by the trial judge and not the jury. The opinion does not consider the question of what instructions may be given to the jury as to their responsibilities in reviewing a purported confession.

If a trial judge instructs a jury that the court has held a separate hearing to determine the voluntariness of a statement made by the defendant, and further indicates that the statement was

found to be voluntary, it is not likely that the jury will thereafter decide that the statement was not made at all. The better practice would be to admit the statement and advise the jury that they should find 1) if it was made, and 2) if they so find, they should decide if the statement is true.

In this case, defense counsel made no objection to the court's instructions either when they were given after the testimony of Sergeant Williams or when they were incorporated into the court's formal instructions to the jury. In fact, defendant's counsel expressed his satisfaction with the instructions as given. Consequently, we find no error. GCR 1963, 516.2; MCLA 769.26; MSA 28.1096; *People v Keiswetter,* 7 Mich App 334 (1967).

### Issue II

*Was it reversible error for the trial court gratuitously to instruct the jury on the law of aiding and abetting in the absence of a prosecution claim that defendant was aiding or abetting someone in the commission of the crime for which he was charged?*

Defense counsel made no objection to the judge's charge of aiding and abetting. The police officers testified that the passenger, defendant Sayles, placed his hand under the seat just before the police got to the car, that they found a gun under the seat, and that another gun was found on the seat. In view of this evidence from which a jury could infer joint action on the part of one defendant with the other defendant in the possession of the guns, and the failure by defense counsel to object to the charge, we find no error.

### Issue III

*Did prejudicial error result from the prosecu-*

*tor's repeated reference to the fact that defendant was carrying $1350 when he was arrested, and from his reference to the fact that defendant was initially arrested for investigation of armed robbery although he was never tried for that offense?*

Defense counsel neither objected to the testimony that defendant was found with the money in his possession nor protested the mention of the fact that he had been initially arrested for armed robbery, and in fact utilized this evidence himself during his closing argument. The testimony concerning the money had probative value because possession of the money supplied a motive for defendant to carry a gun. In the absence of manifest injustice, this Court will not review evidentiary questions not raised in the trial court. *People v Gill,* 12 Mich App 383 (1968); *People v Maglaya,* 17 Mich App 379 (1969); *People v Belcher,* 29 Mich App 341 (1971); *People v Dupree,* 36 Mich App 138 (1971); *People v Galinski,* 38 Mich App 214 (1972).

If a new trial were granted and testimony concerning the fact that defendant was initially arrested for suspicion of armed robbery were excluded, there is little likelihood that a jury would reach a different conclusion from that reached by the jury in this case. We find no prejudicial error.

*Issue IV*

*Were the prosecutor's closing remarks to the jury regarding his attitude toward the carrying of unlicensed handguns in the City of Detroit inflammatory?*

Defendant's counsel made no objection to the prosecutor's closing remarks. Failure to object to a prosecutor's improper jury argument precludes review of it in the absence of a showing of mani-

fest injustice. *People v Miron,* 31 Mich App 142 (1971); *People v Wesley Brown,* 35 Mich App 153 (1971). We have considered the remarks of the prosecutor and find that they were not sufficiently egregious to require an exception to the above-stated rule.

## *Issue V*

*Was it prejudicial error to require defendant to be tried before a third jury drawn from the same monthly jury panel?*

On November 15 and 16, 1971, defendant Williams was tried in an entirely separate case for possessing a pistol in a motor vehicle without a license. MCLA 750.227; MSA 28.424. While the jury in that case was deliberating, the jury in the present case was being voir dired, with trial in the instant action commencing on November 16, 1971. After the first jury in this case was discharged on November 19, 1971 because the members could not agree on a verdict, the trial judge began to voir dire the jury panel to select a second jury.

Defendant's attorney objected to drawing a second jury from the same group of veniremen. The November panel for Recorder's Court consisted of 258 members. Sixty-six of these had already appeared in court during selection of juries for the two cases in which defendant had previously been tried. In response to defendant's contention that the procedure would result in an excessive chance of prejudice and would prevent a fair trial, the trial judge pointed out that the first jury in the present case had been sequestered and therefore had no opportunity to speak with any of the prospective jurors who were subsequently brought in for voir dire. Although defense counsel contended that the remainder of the panel from

which that jury had been picked had been milling about in the hall with the other jurors, he could not enumerate any specific instance in which one of the previous jury members had spoken to the prospective jurors about to be brought in for the voir dire. The court overruled the objection.

Before beginning voir dire, the court asked if any members of the panel had ever heard of the parties involved or had any prior knowledge of the case. As new members replaced those dismissed, some were specifically asked if they knew any of the parties involved. Others were simply asked if they would have given different answers to the questions put to the preceding panel members. Defendant exercised only six of the ten peremptory challenges available to him and joined the prosecutor in expressing satisfaction with the jury. There was no error.

### *Issue VI*

*Is defendant's sentence of 4-1/2 to 5 years' imprisonment contrary to the holding of* People v Tanner, *387 Mich 683 (1972)?*

Defendant's minimum sentence of 4-1/2 years exceeds two-thirds of the maximum 5-year term provided by MCLA 750.227; MSA 28.424 and thus contravenes the legal principle enunciated in *Tanner.* We therefore order defendant's minimum sentence reduced to three years and four months. GCR 1963, 820.1(7).

Except as above set forth, the trial court is affirmed.