PEOPLE v MOSLEY (ON REMAND)

OPINION OF THE COURT

1. COURTS—CONSTITUTIONAL LAW—STATE CONSTITUTION—FEDERAL
   CONSTITUTION—IDENTICAL LANGUAGE—INTERPRETATION—STAN-
   DARD OF REVIEW.

   The Court of Appeals, through interpretation of the Michigan
   Constitution, is not free to establish a standard of review, in
   regard to the right against self-incrimination, which is higher
   than that stated by the United States Supreme Court through
   interpretation of identical language found in the United States
   Constitution; if such a rule is formulated, it is within the
   exclusive province of the Michigan Supreme Court to do so (US
   Const, Am V; Const 1963, art 1, § 17).

2. CRIMINAL LAW—ILLEGAL ARRESTS—CONFESSIONS—VOLUNTARINESS
   —ADMISSIBILITY.

   A showing of voluntariness of a criminal defendant's confession
   and a showing of compliance with *Miranda* requirements is not
   sufficient to render the confession admissible if it appears that
   the confession is the product of an illegal arrest.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—CONFESSIONS—VOLUNTARI-
   NESS—FUNCTION OF THE JURY.

   A criminal defendant is entitled to a new trial where the trial
   judge advised the jury that, as a matter of law, defendant's
   confession to the police was given freely and voluntarily where
   the effect of this instruction is to stamp upon defendant's
   confession the endorsement of the court and substantially
   deprive defendant of his right to a jury determination of
   whether the confession was made, and if so, the weight to be
   afforded it.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 359.
[2, 3, 5, 6] 29 Am Jur 2d, Evidence §§ 523–596.
[4] 40 Am Jur 2d, Homicide §§ 498, 506, 534, 535.
   Absence of evidence supporting charge of lesser degree of homicide
   as affecting duty of court to instruct as to, or right of jury to
   convict of, lesser degree. 102 ALR 1019.

4. HOMICIDE—FELONY MURDER—UNDERLYING FELONY—INSTRUCTIONS
   TO JURY—MANIFEST INJUSTICE.
   Failure to instruct a jury on the elements of the felony underly-
   ing a felony murder charge may constitute manifest injustice if
   the underlying felony is substantially in issue, even absent
   objection.

CONCURRENCE IN PART, DISSENT IN PART BY R. M. MAHER, J.

5. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—INSTRUCTIONS TO
   JURY—NEW TRIAL.
   *Remand for a new trial is necessary where the trial court
   improperly announced to a jury it's finding that, as a matter of
   law, a criminal defendant's confession to the police was volun-
   tary.*

6. CRIMINAL LAW—CONFESSIONS—ADMISSIBILITY—ARRESTS—PROBABLE
   CAUSE.
   *An anonymous tip, which did not verify itself, did not provide the
   basis for a reasonable belief that a defendant had committed
   the crimes under investigation, even when the tip was com-
   bined with several general descriptions of suspects that could
   fit thousands of people in the area; therefore, the defendant's
   arrest was not legal and his subsequently obtained confession
   was not admissible at trial.*

Appeal from Recorder's Court of Detroit. Henry
Heading, J. Submitted October 5, 1973, at Detroit.
(Docket No. 14318.) Decided November 22, 1976.
Leave to appeal applied for.

Richard B. Mosley was convicted of first-degree
murder. Defendant appealed. Reversed and re-
manded for a new trial, 51 Mich App 105 (1974).
The people sought leave to appeal to the Supreme
Court, which was denied. The people, upon grant
of their application for a writ of certiorari, ap-
pealed to the United States Supreme Court, which
vacated the decision of the Court of Appeals and
remanded the case for further consideration, 423
US 96 (1975). On remand, reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Criminal Division, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: DANHOF, C. J., and R. M. MAHER and D. F. WALSH, JJ.

ON REMAND FROM U.S. SUPREME COURT

DANHOF, C. J. On April 5, 1972, the defendant was found guilty by a jury on one count of felony murder in violation of MCLA 750.316; MSA 28.548.

The defendant having taken an appeal by right, this Court reversed his conviction and remanded the case for a new trial after having decided only a single issue. It was the conclusion of this Court that the defendant's confession had been obtained in violation of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and was therefore improperly admitted. *People v Mosley,* 51 Mich App 105; 214 NW2d 564 (1974). Leave to appeal was denied by our Supreme Court, 392 Mich 764 (1974). Upon grant of the people's application for writ of certiorari, the United States Supreme Court vacated our holding and remanded the case for our further consideration. *Michigan v Mosley,* 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975).

In his brief and supplemental brief, the defendant raises four meritorious issues which we now consider.

He first argues that although *Michigan v Mosley*

is binding upon the courts of this state as the proper interpretation of the US Const, Am V, we are free to interpret the identical language found in Const 1963, art 1, § 17 as we feel is proper, and in doing so establish what he terms a "higher" standard. Such an action is not without precedent. See, for example, the holdings of the Michigan Supreme Court regarding illegal searches and seizures in *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), double jeopardy protection in *People v White,* 390 Mich 245; 212 NW2d 222 (1973), and right to counsel in *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973).

We are unaware of any existing authority rooted in Michigan law, rather than upon *Miranda,* which provides that in such a factual setting a confession must be excluded, whether or not found voluntary.

It is our opinion that if such a rule is to be formulated, it is within the exclusive province of the Supreme Court to do so. In the absence of existing Michigan law to support the defendant's position, we hold that his confession is not to be excluded on the single ground of the police conduct complained of here. This is not to say that it is necessarily admissible. It is still subject to exclusion if made involuntarily or otherwise illegally obtained.

Defendant next contends that his confession should be excluded as a product of an illegal arrest under one of the rules of *Wong Sun v United States,* 371 US 471, 491; 83 S Ct 407; 9 L Ed 2d 441 (1963). Unlike the *Miranda* rule, which is designed to protect a defendant's Fifth Amendment right against self-incrimination, the rule of *Wong Sun* is designed to discourage disparagement of his or her Fourth Amendment right to remain

free of illegal seizures of the person. Consequently, mere compliance with the rule of *Miranda* and showing of voluntariness of the confession are not sufficient to render the confession admissible if it appears that the confession is a product of an illegal arrest. *Brown v Illinois*, 422 US 590; 95 S Ct 2254; 45 L Ed 2d 416 (1975). In order for us to sustain the defendant's contention, two requisites must be established: that the defendant was illegally arrested and that the statement made was not "sufficiently an act of free will to purge the primary taint", *Brown, supra,* 422 US at 597.

We have examined the record of the circumstances surrounding the defendant's arrest and conclude that the arrest of the defendant was made upon probable cause to believe that he was the perpetrator of one or more robberies and was, therefore, legal. Consequently, the confession that followed was not inadmissible on this ground.

The defendant's next assignment of error relates to the method by which the trial court submitted his confession to the jury. Having found at an early *Walker* hearing, *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), that the confession had been voluntarily made, the court told the jury:

> "*The Court:* Now, I think it is time for the Court to caution the jury as to what has happened here as to the statement.
> "I have ruled, as a matter of law, that this statement was at the alleged time here, let's put it that way, was given freely and voluntarily.
> "*Mr. Ziemba:* Now, I object your Honor."

Later in his charge to the jury the court repeated his finding of the *Walker* hearing and instructed the jury that it was their function to

decide whether the statement had in fact been made. The effect of the instructions delivered is to stamp upon the confession the endorsement of the court and substantially deprive the defendant of his right to a jury determination of whether the statement had been made, and if so, the weight to be afforded it. *Walker, supra.* Upon this ground, the defendant is entitled to a new trial. *People v Williams,* 46 Mich App 165; 207 NW2d 480 (1973), *People v Gilbert,* 55 Mich App 168; 222 NW2d 305 (1974).

The defendant also assigns error to the unobjected-to failure of the trial court to instruct the jury on the elements of the underlying felony. We have held that even absent any objection, if commission of the underlying felony is substantially in issue, it is incumbent upon the court to instruct on its elements. Failure to so instruct may constitute manifest injustice. *People v Jones,* 66 Mich App 223; 238 NW2d 813 (1975), *People v McGhee,* 67 Mich App 12; 239 NW2d 741 (1976). The trial court is cautioned, upon retrial, to consider the impact of these decisions.

The defendant's conviction is reversed and the matter remanded to the trial court.

D. F. WALSH, J., concurred.

R. M. MAHER, J. *(concurring in part; dissenting in part).* I agree with the majority's decision to remand for a new trial because the trial court improperly announced to the jury its finding that defendant's confession was voluntary. I cannot, however, agree with the majority's conclusion that defendant's arrest was legal.

In the opinions issued by the United States Supreme Court in *Michigan v Mosley,* 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975), the legality of

defendant's arrest was not reviewed. But both the majority opinion of Justice Stewart and the dissenting opinion of Justice Brennan noted the basis for defendant's arrest. Justice Stewart referred to the testimony of the arresting officer that "information supplied by an anonymous caller was the sole basis for his arrest of Mosley". 423 US at 97, fn 1. Justice Brennan, in dissent, pointed out that an anonymous tip was "conceded by the Court to be the sole basis for Mosley's arrest". 423 US at 118 *(dissenting opinion)*.

A review of the testimony taken at the hearing on defendant's motion to suppress his confession confirms the statements found in the Supreme Court opinions. The arresting officer testified that some time prior to defendant's arrest on April 8, 1971, he received an anonymous phone call while on duty at Detroit Police Headquarters. The caller named defendant as one of the persons involved in recent armed robberies on the city's lower east side.

On direct examination, the arresting officer was asked:

"*Q.* What information did you have that prompted you to arrest Richard Bert Mosley on that particular date?
"*A.* It was some time during the first week in April, got an anonymous phone call from—that—and the party gave me the name of several persons that were operating on the lower east side, holding up places and that, and the name of Richard Mosley and another party—two other men, I believe—that the information was that they had held up—."

On cross-examination, the officer testified:

"*Q.* At the conclusion of your conversation with this

anonymous telephone caller, did you apply to any judge
or magistrate for a warrant of arrest for Mr. Mosley?

"*A.* No, sir.

"*Q.* For what offense specifically did you arrest Mr.
Mosley at 1:05 p.m. or thereabouts on April 8th of
1971?

"*A.* For investigation of the robbery armed of the
Blue Goose Bar and the White Tower Restaurant on
Mack.

"*Q.* Was the White Tower Restaurant mentioned to
you during your telephone conversation with this anon-
ymous caller?

"*A.* Yes.

"*Q.* And the Blue Goose Bar also?

"*A.* Yes.

"*Q.* Would it be fair to say, Sergeant Cowie, that you
arrested Mr. Mosley on April 8th of 1971, solely and
exclusively on the information that you received from
this anonymous telephone caller?

"*A.* Yes."


The hearing on defendant's motion continued
the next day. The arresting officer then produced
"pattern sheets"[1] to show that more than the
anonymous phone call prompted defendant's ar-
rest. The officer testified on direct examination
that he had consulted descriptions from pattern
sheets on recent lower east side robberies before
he arrested defendant and that defendant matched
several descriptions. The officer stated that defend-
ant matched the description of the person involved
in the March 25, 1971, robbery at the Night Party
Store. The pattern sheet gave this description of
the robber: 20s, 5-9, 130, afro, pencil mustache,
medium complexion. The officer also stated that
defendant matched the pattern sheet descriptions

---

[1] Pattern sheets are synopses of recent crimes drawn from the
accounts given by victims and witnesses and circulated internally by
the police department.

of two of the three men in the March 19, 1971, robbery at the Kercheval Market. One man was described as 20, 5-11, 160, dark complected, short hair. The other was described as 20, 5-6, 130, dark complected, trim mustache.

The officer had testified the day before that he had arrested defendant for investigation of robberies at the Blue Goose Bar and at the White Tower Restaurant. He did not attempt on direct examination to match defendant with the pattern sheet descriptions of the persons involved in those incidents. On cross-examination, the officer stated that defendant could have fit the description given for the number 1 man at the White Tower robbery. That man was described as 20, 5-8, 150, light complected, medium afro.

The four pattern sheet descriptions that the officer stated he relied on were, in part, inconsistent. The Kercheval Market robbers were described as dark complected, the Night Party Store robber as medium complected and the White Tower Restaurant robber as light complected. Two robbers were described as having afros, one as having short hair. Two were described as having mustaches, while two were not. Where the descriptions were not obviously inconsistent, they were not very helpful. There are thousands of young black males of medium height and medium weight in Detroit.

Under these circumstances, I cannot find a valid warrantless arrest of defendant. An anonymous tip, which did not verify itself, *cf. Draper v United States,* 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959), even if combined with several general descriptions that could fit thousands of people in the area, does not provide the basis for a reasonable belief that defendant had committed the robberies

under investigation. *Spinelli v United States,* 393
US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969), *People
v Walker,* 64 Mich App 138; 235 NW2d 85 (1975).
Under *Wong Sun v United States,* 371 US 471; 83
S Ct 407; 9 L Ed 2d 441 (1963), and *Brown v
Illinois,* 422 US 590; 95 S Ct 2254; 45 L Ed 2d 416
(1975), admission of defendant's confession was
error.