PEOPLE v SMITH

PEOPLE v RUFUS JACKSON

1. Criminal Law—Confessions—Voluntariness—Separate Eviden-
tiary Hearing—Jury.

The voluntariness of a confession of a person accused of a crime
is to be tested in a separate evidentiary hearing outside of the
presence of the jury.

2. Criminal Law—Confessions—Voluntariness—Walker Hearing
—Appeal and Error.

The sole purpose of a *Walker* hearing is to determine the volun-
tariness of a defendant's confession, and a reviewing court is
concerned only with the correctness of that determination; the
Court of Appeals is required to examine the whole record and
make an independent determination of the ultimate issue of
voluntariness, and, if after such review the Court does not
possess a definite and firm conviction that a mistake was
committed by the trial court in its ruling, the Court of Appeals
should affirm that ruling.

3. Criminal Law—Confessions—Voluntariness—Totality of Cir-
cumstances—Witnesses—Credibility—Deference to Trial
Court—Appeal and Error.

The voluntariness of a defendant's confession is to be determined
from the totality of circumstances; where credibility is at issue,
the Court of Appeals will give deference to the finding of the

References for Points in Headnotes
[1, 2] 29 Am Jur 2d, Evidence § 584.
[3] 29 Am Jur 2d, Evidence § 582.
[4] 4 Am Jur 2d, Appeal and Error §§ 533, 535.
    5 Am Jur 2d, Appeal and Error § 891.
[5] 75 Am Jur 2d, Trial §§ 293–295.
    Counsel's reference in criminal case to wealth, poverty, or financial
    status of defendant or victim as grounds for mistrial, new trial, or
    reversal. 36 ALR3d 839.
[6] 81 Am Jur 2d, Witnesses § 523.
[7] 21 Am Jur 2d, Criminal Law § 319.

trial court, since the trial judge is in a superior position to judge the credibility of the witnesses.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—OBJECTION—PRESERVING QUESTION—SPECIFICITY OF OBJECTION.

No party may assign as error failure to give or the giving of an instruction unless an objection is raised before the jury retires to consider the verdict; the objecting party must specifically state the grounds for his objection at that point.

5. CRIMINAL LAW—EVIDENCE—DISCRETION—CROSS-EXAMINATION OF DEFENDANT—POVERTY—UNEMPLOYMENT—PRESERVING QUESTION.

The trial court has broad discretion in exercising its judgment whether a particular line of inquiry or argument is to be allowed before the jury; it was not an abuse of the trial judge's discretion to allow a prosecutor to question a defendant, on cross-examination, relative to the defendant's lack of funds and unemployment where (1) most of the cross-examination of the defendant was not objected to and thus beyond appellate review because the questioning did not create a manifest injustice, and (2) the subjects complained of were, for the most part, put in issue first during the direct examination of the defendant.

6. WITNESSES—CRIMINAL LAW—CREDIBILITY OF DEFENDANT—IMPEACHMENT—SCOPE OF QUESTIONING—DISCRETION.

The credibility of a criminal defendant who chooses to testify on his own behalf is open to impeachment on the same basis as that of an ordinary witness; the scope of such questioning rests within the sound discretion of the trial court and is not subject to review unless it is shown to have been grossly and oppressively abused.

7. CRIMINAL LAW—ASSISTANCE OF COUNSEL—SHARED COUNSEL—ATTORNEY AND CLIENT.

Shared counsel for multiple defendants on trial for the same offense is not prejudicial per se.

Appeal from Wayne, John D. O'Hair, J. Submitted June 24, 1977, at Detroit. (Docket Nos. 28702, 28735.) Decided December 5, 1977.

Ronnie L. Smith and Rufus Jackson were convicted of armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Craig L. John,* Assistant Prosecuting Attorney, for the people.

*Terence R. Flanagan,* Assistant State Appellate Defender, for defendants on appeal.

Before: BEASLEY, P. J., and V. J. BRENNAN and J. R. McDONALD,* JJ.

J. R. McDONALD, J. Defendants, Rufus Jackson and Ronnie Lee Smith, were convicted of the charge of armed robbery, MCLA 750.529; MSA 28.797. The trial was unique in that each defendant had a separate jury to decide their respective cases, but were present in the same courtroom and heard the same evidence. Both defendants were represented by the same attorney. At the trial, defendant Jackson elected to testify in his own behalf, while defendant Smith chose not to testify. Defendant Jackson was the only witness presented by the defense. The jury verdicts were handed down on February 25, 1976. On March 10, 1976, defendant Smith was sentenced to a period of not less than 10 years with a maximum imprisonment of 15 years. Defendant Jackson was sentenced to a period of from 5 to 15 years. Both defendants appeal their convictions as of right, asserting five claims of error. On March 4, 1977, both cases were consolidated on appeal.

It is claimed by defendants: (1) that the trial court erred in considering the content of alleged confessions of defendants during a *Walker* hearing on the voluntariness of the confessions, (2) that the trial court erred in finding that the confessions

---

* Circuit judge, sitting on the Court of Appeals by assignment.

were voluntarily given, (3) that the trial court erred in not instructing the jury that it was their responsibility to determine whether defendants made the confessions, and whether the confessions were true, (4) that the trial court erred in allowing the prosecutor, on cross-examination, to question Jackson regarding his poverty and unemployment, and (5) that the representation of both defendants by the same attorney denied them their right to effective assistance of counsel.

For purposes of discussion, we will consolidate the first two issues raised by defendants.

I and II. The *Walker* Hearing.

Prior to trial, the court conducted a *Walker* hearing to determine the voluntariness of the alleged confessions of both defendants. Detective William Ackerman, who interrogated defendants and obtained the confessions, said that neither defendant had appeared to be in any physical distress during the questioning. Defendants claimed they were suffering heroin withdrawal symptoms at the time of their arrest and interrogation and were "climbing the walls" by the time they gave the incriminating statements. They said they were denied medical treatment until after they signed the statements.

Defendants said they had been told by a jail turnkey that they would get medical treatment if they cooperated with the police. Jackson claimed that Ackerman said the same. The jail turnkey was not called to testify. Ackerman denied making the statement and said he could not recall discussing the matter with the turnkey. Both defendants said they signed statements only to get medical aid.

Lincoln Park Officer Gordon Loveday was the arresting officer. He arrested defendants on the

evening before the statements were made. He said,
that at the time of their arrest, neither defendant
appeared to be in any distress, and Jackson did
not seem to be concerned about the sores on his
arms and legs.

The content of defendants' statements was read
into the *Walker* hearing record by Ackerman,
after he was asked the question in regard to each
defendant, "What, if anything, did he say?"

Hospital medical records on both defendants
were admitted into evidence. Defendants were
treated at Outer Drive Hospital in Lincoln Park
several hours after signing confessions. The medi-
cal reports indicated that Jackson was given peni-
cillin shots for the open sores on his arms and
legs. The reports also indicated that both defend-
ants were heroin addicts and were suffering with-
drawal. It was noted that Jackson was "awake and
alert", and Smith had "cramps". Both were given
prescriptions for Valium.

The trial court noted that there had been con-
flicting testimony as to the circumstances attend-
ing the giving of the confessions and accepted as
credible the testimony of Ackerman. He said that,
in his opinion, testimony established that defend-
ants were in full control of themselves and were
not irrational when the statements were made.
Nor were they in any apparent distress. The trial
court recognized that defendants were treated at
the hospital for "apparently unquestioned drug
withdrawal symptoms", but found that the hospi-
tal reports corroborated Ackerman's version of
what happened rather than defendants'. The trial
court was especially impressed by the assessment
by the hospital of Jackson's condition as "awake
and alert". The trial court found that the confes-
sions were voluntarily given.

Defendants claim that the trial court exceeded its authority in considering the credibility of defendants and insist that their confessions were not voluntary.

The voluntariness of a confession of a person accused of a crime is to be tested in a separate evidentiary hearing outside of the presence of the jury. *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965). Such a hearing was held in the instant case, but defendants allege error in procedure and outcome.

The sole purpose of a *Walker* hearing is to determine the fact of voluntariness, and a reviewing court is concerned only with the correctness of that determination. On appeal, we are required to examine the whole record and make an independent determination of the ultimate issue of voluntariness. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). If after such a review we do not possess a definite and firm conviction that a mistake was committed by the trial court in its ruling, we will affirm that ruling. *People v Hummel,* 19 Mich App 266; 172 NW2d 550 (1969).

Voluntariness is to be determined from the totality of the circumstances, *People v Cutler,* 73 Mich App 313; 251 NW2d 303 (1977), and, where credibility is at issue, this Court will give deference to the findings of the trial court, since the trial judge is in a superior position to judge the credibility of the witnesses. *People v Combs,* 69 Mich App 711; 245 NW2d 338 (1976), *People v Hummel,* 19 Mich App 266, 268-270; 172 NW2d 550 (1969).

In *Combs, supra,* this Court stated:

"In reviewing the cold, typewritten transcript of the *Walker* hearing it is clear that there was a conflict

between the two versions of the incident presented to the trial court. Since the central issue becomes one of credibility we will not disturb the trial court's findings of fact. *People v Olson*, 66 Mich App 197, 201; 238 NW2d 579 (1975). The trial court was not required to accept defendant's version of the incident and we cannot say after reviewing the entire record of the *Walker* hearing that the trial court's finding that the defendant's statements were voluntarily made is clearly erroneous." 69 Mich App at 716.

Credibility was a central issue in the instant case. Defendants' claim that the trial court erred in considering their credibility is without merit. The trial court was not required to believe defendants' version of what happened, and apparently he did not. He believed instead the testimony of the police officers, and found that their testimony was corroborated by hospital records detailing medical treatment given defendants.

Defendants also claim that the trial court erred in considering the content of statements they allegedly made to police. However, they made no objection during the *Walker* hearing when Ackerman was asked what defendants had said. Nor was there any objection when Ackerman read the statements into the record in reply to the question. Furthermore, a review of the trial court's findings in the *Walker* hearing does not indicate that it was influenced by or considered the substance of the statements.

Defendants' reliance upon *People v Britt*, 37 Mich App 175, 177; 194 NW2d 528 (1971), *lv den*, 387 Mich 752 (1972), is misplaced. In *Britt*, this Court stated that "it would be desirable if a judge conducting a *Walker* hearing concerning the admissibility of a statement did not learn the nature of the statement until after he had made his decision on the issues of voluntariness and admis-

sibility, so that his decision on those issues is not subconsciously influenced by knowledge of admissions made in the statement. However, we can visualize situations where, because of the defendant's testimony or other evidence at the *Walker* hearing, it may become necessary for the people to introduce inculpatory aspects of the statement in rebuttal." It is clear from the language used by the Court that a per se exclusionary rule was not intended.

A review of the entire record in this case does not bring us to a definite and firm conviction that a mistake was committed by the trial court in its ruling. *People v Hummel, supra, People v Thomas Jones,* 73 Mich App 107; 251 NW2d 264 (1976). Defendants' claim of error is without merit.

III. Instructions on Confessions.

Defendants contend that the trial court committed reversible error in not instructing the jury that it was their responsibility to determine whether defendants made the confessions introduced at trial, and whether the confessions were true. The trial record does not reveal that defendants requested any instructions on confessions. The record does reveal that defense counsel said he was satisfied with the instructions given by the trial court.

It is well-settled that no party may assign as error failure to give or the giving of an instruction unless objection is raised before the jury retires to consider the verdict. The objecting party must specifically state the grounds for his objection at that point. *People v Broom,* 50 Mich App 337, 341; 213 NW2d 247 (1973), GCR 1963, 516.2; MCLA 769.26; MSA 28.1096.

Defendants' reliance upon *People v Williams,* 46 Mich App 165; 207 NW2d 480 (1973), is misplaced.

This Court, in *Williams,* stated that the better practice with regard to confessions found in a *Walker* hearing to be voluntary would be to advise the jury "that they should find 1) if it was made, and 2) if they so find, they should decide if the statement is true". 46 Mich App at 170. However, in *Williams,* this Court held that since defense counsel made no objection to the trial court's instructions and, in fact, expressed satisfaction with the instructions as given, there was no error.

In the instant case, since defendants made no objections to the trial court's instructions, and expressed satisfaction with the instructions as given, we hold that there was no error. *Williams, supra, People v Bradley,* 54 Mich App 89; 220 NW2d 305 (1974).

IV. Improper Cross-Examination.

Defendant Jackson testified at trial; Smith did not. On direct examination appellant Jackson stated that he lived in a housing project in Ecorse. He also testified that he was trying to pawn his rifle because he was unable to pay his rent. Defendant Jackson also testified on direct examination that he was addicted to heroin. Defendants contend that the following recross-examination of defendant Jackson constituted reversible error:

"Q *[by Mr. Telek, Assistant Prosecuting Attorney]:* Sir, where did you work?

"A I was laid off.

"Q How long have you been laid off?

"MR. TAMSEN *[defense counsel]:* I think that's improper on redirect I did not ask anything about employment. I think he's going beyond the field of redirect.

"MR. TELEK: I'll tie it in if the Court will bear with me.

"THE COURT: In the exercise of judicial discretion, I'll allow it as it is cross examination.

"Q (By Mr. Telek) What was your last answer, sir?
"A What did you say?
"Q How long had it been since you worked?
"A It would have been a year Christmas.
"Q And, you have been an addict for seven years?
"A Yes.
"Q Using it regularly?
"A Well, off and on, methadone clinics.
"Q This costs money, right?
"A Yes.
"Q How much money?
"A Whatever one can spend on it.
"Q Pardon?
"A Whatever one could spend.
"Q I see. But you weren't using the rifle to get this money, is that correct?
"A No, I wasn't."

Later, the following occurred:

"Q Although you're not working, you didn't support your habit by robbing, did you?
"A No, I didn't."

Defense counsel did not object at this point.

Defendants in the instant case claim that under *People v Johnson,* 393 Mich 488; 227 NW2d 523 (1975), the cross-examination of Jackson as to his poverty and lack of employment constituted reversible error.

In the recent case of *People v Thomas Jones,* 73 Mich App 107, 109; 251 NW2d 264 (1976), the Court was confronted with an alleged *Johnson* error. In the *Jones* case, the defendant claimed that the prosecutor was improperly allowed to cross-examine the defendant and other defense witnesses regarding the unemployment and pov-

erty of the defendant at the time of the alleged offense.

The *Jones* Court, at page 109, said:

"Argument one, just stated, is premised principally upon the Michigan Supreme Court disposition of a similar question in *People v Johnson*, 393 Mich 488; 227 NW2d 523 (1975), and would be determinative if we were to countenance a strained interpretation of *Johnson* which states that the mere asking of *any* question by the prosecutor, regardless of justification, concerning defendant's unemployment or poverty required reversal. It is clear that this interpretation of Johnson is erroneous.

"The basic fallacy of defendant's contention is demonstrated by the following language of Justice WILLIAMS in *Johnson*, at 499:

" 'That is not to say, however, that the trial court does not have considerable discretion in ruling on the relevance and materiality of argument coming before it. Clearly, the trial court has broad discretion in exercising its judgment whether a particular line of inquiry or argument is to be allowed before the jury. * * * Yet there is an obvious limit to the exercise of such discretion in cases of abuse.' " (Footnote omitted.) (Citation omitted.)

"It is plain, therefore, that the Supreme Court did not set forth a per se reversal rule. Instead, the question before us for decision is this: Whether the court below abused its discretion in allowing this line of questioning."

Like the *Jones* Court we are mindful of the extreme prejudice that can be engendered by irrelevant questions relating to a defendant's poverty or unemployment. The onus cannot be placed on the defendant to disprove the inference which might arise from irrelevant and highly prejudicial testimony on this subject, that being: a defendant is guilty solely because he is poor. In the instant case, to hold that it was error to allow the ques-

tioning of the prosecutor would clearly be a misapplication of Johnson.

We have examined the testimony with care and conclude that the defendants' argument is without merit. Most of the cross-examination of the defendant Jackson was not objected to and thus absent manifest injustice which is not present here, is beyond appellate review. The subjects complained of were, for the most part, put in issue first during the direct examination of the defendant.

It is basic to Michigan jurisprudence that once the defendant chooses to testify on his own behalf, and in fact takes the witness stand, his credibility is open to impeachment on the same basis as an ordinary witness. The scope of such questioning rests within the sound discretion of the trial court and is not subject to review unless it is shown to have been grossly and oppressively abused. *People v Johnson, supra.* From a careful review of the direct and cross-examination of defendant Jackson we find no abuse of discretion, nor manifest injustice to the defendants, and therefore no reversible error.

V. Representation of Both Defendants by Same Counsel.

Finally, defendants contend that the representation of both defendants by the same attorney denied them their right to effective assistance of counsel. Shared counsel is not prejudicial per se. *People v Tillman,* 59 Mich App 768; 229 NW2d 922 (1975). We find in the instant case that defendants suffered no prejudice from sharing counsel, therefore, no reversible error resulted. *People v Osborn,* 63 Mich App 719, 724; 234 NW2d 767 (1975), *People v Spencer,* 61 Mich App 392, 396; 232 NW2d 413 (1975), *People v Dockery,* 20 Mich App 201, 210; 173 NW2d 726 (1969).

Affirmed.