PEOPLE v SANDERS (ON REMAND)

Docket No. 134292. Submitted October 29, 1990, at Lansing. Decided July 22, 1991, at 9:50 A.M. Leave to appeal sought.

Daniel L. Sanders was convicted by a jury in the Recorder's Court of Detroit, Leonard Townsend, J., of two counts of first-degree felony murder and one count of possession of a firearm during the commission of a felony. The defendant appealed and the Court of Appeals, MURPHY, P.J., and MACKENZIE and REILLY, JJ., affirmed in an unpublished opinion per curiam, decided March 29, 1989 (Docket No. 103234). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals to consider whether the error requiring reversal occurred as a result of the trial court's refusal to give a requested instruction concerning larceny from a person and larceny in a building. 436 Mich 877 (1990).

On remand, the Court of Appeals *held:*

A court in a trial involving a felony-murder charge is required to instruct the jury that it may convict the defendant of the underlying felony only where there is evidence to establish that the homicide and the underlying felony were committed separately. Because the record fails to supply evidentiary support for an inference that the underlying larceny and the murders in this case were unconnected separate acts committed by separate persons, the trial court properly refused to instruct the jury that larceny from a person and larceny in a building were included offenses.

Affirmed.

HOMICIDE — FELONY MURDER — JURY INSTRUCTIONS — INCLUDED OFFENSES.

A trial court may properly refuse to instruct the jury in a trial involving a felony-murder charge that the defendant may be acquited of felony murder but convicted of the underlying felony where there is no evidence supporting an inference that the murder occurred at some time other than during the commission of the underlying felony.

REFERENCES

Am Jur 2d, Homicide §§ 46, 534, 535.

See the Index to Annotations under Felony Murder Doctrine.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Janet A. Napp,* Assistant Prosecuting Attorney, for the people.

*Patricia S. Slomski,* for the defendant.

ON REMAND

Before: MURPHY, P.J., and MACKENZIE and REILLY, JJ.

MURPHY, P.J. After a jury trial, defendant was convicted of two counts of felony murder, MCL 750.316; MSA 28.548, and was sentenced to two concurrent prison terms of life without parole and a consecutive two-year term for possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant's convictions arose out of the stabbing and shooting deaths of Sharon and Karen Douglas. Defendant claimed an appeal as of right, and this Court affirmed in an unpublished opinion per curiam, decided March 29, 1989 (Docket No. 103234). Defendant sought leave to appeal to the Supreme Court, which, in lieu of granting leave, remanded the case to us "for consideration of the issue whether reversible error occurred in the refusal of the trial court to give requested instructions on larceny from a person and larceny in a building and a statement of reasons for disposition." 436 Mich 877-878 (1990). Again, we affirm.

Recently, the Supreme Court again discussed the legal doctrines necessary to resolve issues involving lesser included offense instructions in *People v*

*Heflin,* 434 Mich 482; 456 NW2d 10 (1990). Necessarily included lesser offenses are those in which the defendant cannot commit the greater offense without also committing the lesser offense. By contrast, cognate lesser included offenses are those in which the lesser offense shares some common elements with the greater offense, but which may also include some elements not found in the greater offense. *Id.,* 495. See also *People v Beach,* 429 Mich 450, 461; 418 NW2d 861 (1988), and *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975).

This distinction becomes important in determining when a trial judge must instruct the jury with regard to a particular lesser included offense. Where the lesser included offense is necessarily included, the evidence will always support the lesser offense if it supports the greater. However, cognate offenses require the evidence in each particular trial to be examined to determine whether the specific evidence adduced would support a conviction of the requested lesser offense. *Heflin, supra.* A defendant may request and receive necessarily included offense instructions without regard to the evidence. Instruction concerning a cognate lesser included offense should be given if the evidence would support a conviction of the requested lesser offense. *Id.*

Unfortunately, the underlying or predicate felony of a felony-murder charge, in this case larceny, is not so easily categorized as either a necessarily or cognate lesser included offense. While it is true that the underlying felony necessarily must be committed in order for a murder to constitute felony murder, it is also true that the particular predicate offense required for a finding of felony murder will differ depending on the facts of the case. Thus, the predicate felony of a felony-murder

charge has characteristics of both a necessarily and a cognate lesser included offense.

In truth, the underlying felony is not a lesser included offense at all. The concept of lesser included offenses implies a logically linked continuum in which the offenses share elements that coincide in violations of the societal interest to be protected. *Ora Jones, supra,* 390. By contrast, a predicate-based offense and its predicate are tied together by the Legislature. The former offense is defined by reference to the latter offense, or in the case of felony murder a class of offenses, and proof of the latter is a prerequisite for proof of the former. See *People v Wilder,* 411 Mich 328, 359-360; 308 NW2d 112 (1981), (concurring opinion of RYAN, J.). The underlying felony is more accurately classified as an element of the offense of felony murder. See *id.,* 345-348.

In the past, this Court has held that if commission of the underlying felony is substantially at issue in a felony-murder case, the trial court must instruct the jury on the elements of the underlying felony. *People v Mosley (On Remand),* 72 Mich App 289, 294; 249 NW2d 393 (1976), aff'd 400 Mich 181; 254 NW2d 29 (1977). Failure to so instruct may constitute manifest injustice, even absent any objection. *Id.* However, this Court has also held that a trial court's failure to instruct on each element of the underlying felony is not error requiring reversal if there is no dispute over what offense was committed, such as a case in which the defense is based on a theory of misidentification. *People v McGhee,* 67 Mich App 12, 16-19; 239 NW2d 741 (1976); *People v Jones,* 66 Mich App 223; 238 NW2d 813 (1975). Thus, this Court appears to have assumed that the predicate felony is an element of felony murder on which separate

and specific instructions are required only when there is evidence to support them.

In the present case, the trial court did, in fact, instruct the jury concerning the elements of the underlying felony of larceny:

> We're concerned about this case [in which] the People have alleged a larceny. Larceny means stealing. It means taking the property of the victim with the specific intent to permanently deprive the victim of that property. To steal something from someone else without the consent of the victim and keep it and not give it back, that's larceny and the People allege in this case that in the perpetration of a larceny that there was a killing.

Defendant's claim in the present case is not so much that the trial court failed to instruct the jury on the elements of the underlying offense, as that the court failed to instruct the jury in a manner that would allow a conviction on the underlying felony alone. Indeed, it was defendant's theory of the case that he may have committed the larceny, but that he had not murdered Sharon and Karen Douglas. Rather, defendant suggested that another, unknown individual had entered the victims' home and killed them, after defendant had already left the house with the stolen property. Therefore, defendant requested separate instructions on larceny from a person and larceny from a building. The trial court denied this request on the basis that there was no evidence on the record to support the instructions. MCL 750.316; MSA 28.548 provides that a "larceny of any kind" may serve as the predicate felony for a first-degree felony-murder charge. Thus, the general instruction on larceny given by the trial court in this case appears to satisfy the statute unless

the facts of the case warranted more specific instructions. In this case, they did not.

Sharon and Karen Douglas, twin sisters, died on March 8, 1986, as the result of multiple stab wounds and of being shot with a .22 caliber handgun. Expert testimony established that they had died no earlier than 4:30 P.M. and no later than 11:30 P.M. The investigating officers believed that the cause of death was the stab wounds until after the autopsy on the morning of March 9, 1986, when the gunshot wounds were discovered. No information was released to the news media concerning the fact that the victims were both shot and stabbed.

The testimony of various witnesses was consistent with the expert testimony concerning the estimated time of the victims' deaths. Voncille Carter went shopping with Sharon Douglas that afternoon. Sharon bought a turquoise dress and matching shoes. At trial, Carter identified exhibit number twelve as the dress purchased by Sharon Douglas. They returned home at approximately 6:00 P.M. Sharon called Carter at about 7:00 P.M. and Carter telephoned Sharon between 7:30 and 8:00 P.M., but the line was busy. Sharon Douglas called Cynthia Watts sometime between 8:00 and 8:30 P.M. During their conversation, Watts heard Karen Douglas scream. Sharon left the telephone to investigate. Watts heard footsteps going down the stairs, more screaming, and two or three loud noises. When no one returned to the telephone after fifteen or twenty minutes, Watts hung up the receiver. At 11:00 P.M., Voncille Carter arrived at the twins' house to take them to a party. She found the twins' two children asleep on the couch, but no one else appeared to be home. Uneasy, Carter left to join other friends who were also going to the party, and they all returned to the

Douglases' house. They found the twins' bodies lying in each other's arms on the landing of the basement stairs. They called the police. The police found no signs of forced entry or struggle, blood in and on the washing machine in the basement, and a wine cooler bottle with five fingerprints that later proved to be defendant's.

Meanwhile, on the afternoon of March 8, defendant asked Curtis Givens if he wanted to go over to the Douglas twins' house. As it was getting dark that evening, the neighbor across the street, Sheryl Dudley, saw defendant, a frequent visitor at the Douglases' home, coming off their porch rubbing his hands. At about 8:30 to 8:45 P.M., defendant arrived at Reginald Harrison's house, approximately two miles away from the Douglas home. Several people present in the house said that defendant refused to come into the house and stood in the hallway the entire time he was there. They were all unsure of the exact time because the electricity was off as a result of an earlier fire, but they all said it was dark outside. Defendant was carrying a garbage bag and showed Harrison a .22 caliber pistol that he wanted to sell in exchange for some crack cocaine. Defendant said he had been at Sharon's house and asked if he could put the bag downstairs. Defendant tried to sell the gun to Harrison's brother-in-law. Harrison arranged for Carl Laster to give them a ride and went with defendant to Langston Burch's house, where defendant remained in the car while Harrison went inside and sold the gun. They all returned to Laster's house and smoked the crack. Harrison later helped defendant exchange a woman's ring for some crack. Defendant left after Harrison refused to allow him to spend the night. The next day, Harrison and his brother-in-law discovered the bag left in their basement by defen-

dant. Inside the bag, Harrison found a wallet, a dress, a pair of shoes, and a jacket. Harrison testified that he disposed of the bag and its contents because he was afraid. He gave the dress to Valeria Patterson, who later turned the dress over to the police. Both Harrison and Patterson identified exhibit twelve as being that dress. One week later, defendant called Harrison and told him that if the police asked, he should tell them that defendant had arrived at his house at 7:00 P.M. on March 8.

When Nicole Scott arrived at her home at 11:30 P.M. on March 8, defendant was there. She said that defendant often came to her house when he was in trouble. Defendant used the telephone several times. Mary Jane Scott, Nicole's mother, arrived home at about 3:30 A.M. on March 9. Defendant was there and he stayed until Monday. When the telephone rang at about 4:00 A.M., defendant said that if it was for him, she had not seen him. Defendant sold Scott two women's rings, which he said he had found on the bus. Defendant asked Scott to wash his clothes for him. She was unsure if she washed the pants he was wearing and did not see any bloodstains on them. Nicole said her mother washed the pants defendant was wearing. Gloria Hawkins called the Scott house at 3:00 A.M. Defendant answered the telephone and told Hawkins that Scott was upset because she had heard on the news that the twins had been killed. Defendant told Hawkins that Sharon and Karen had been found shot and stabbed in the basement and that their children had been asleep upstairs.

Our review of the evidence presented at trial leads us to conclude that even when the evidence is viewed in a light most favorable to defendant, there was no evidence upon which to base a finding that defendant had committed the larceny but

not the murders. To the contrary, the only logical inference to be drawn was that if the victims were murdered and if a larceny was committed in their home, the same person had committed both offenses and, furthermore, that the murders occurred during the perpetration of the larceny. Thus, the trial court did not err in refusing to allow a conviction on the predicate felony alone.

Moreover, even if the trial court erred in denying defendant's requested instruction, we find that it was harmless error. As noted above, the evidence did not support an inference that the two offenses were committed by different individuals. Moreover, the trial court instructed the jury that it must acquit defendant if it could not conclude beyond a reasonable doubt that he had committed the murders. The suggestion that the jury would disregard the court's instructions and convict defendant of two murders it did not believe he had committed merely because he had stolen a dress strains the imagination to its limits. There was overwhelming evidence that defendant had committed the charged offense, and we conclude that the giving of defendant's requested instructions would not have changed the result.

Affirmed.