PEOPLE v NORWOOD

1. CRIMINAL LAW—PRELIMINARY EXAMINATION—BINDING OVER—DIS-
   MISSAL.

    The prosecution must establish two things at a preliminary
    examination in order to bind a defendant over for trial: (1) that
    the crime with which the defendant has been charged was in
    fact committed, and (2) that there is reasonable cause to believe
    that the defendant committed that crime; absent either ele-
    ment being established, the charges against the defendant must
    be dismissed at the preliminary examination stage.

2. HOMICIDE—FIRST-DEGREE MURDER—OPEN CHARGE OF MURDER—
   BINDING OVER—PRELIMINARY EXAMINATION—PREMEDITATION—
   DELIBERATION.

    A defendant may be bound over to circuit court on an open
    charge of murder and brought to trial on an information
    charging first-degree murder although testimony at a prelimi-
    nary examination fails to show premeditation and deliberation.

3. HOMICIDE—PRELIMINARY EXAMINATION—MAGISTRATES—DEGREE OF
   MURDER—JURY QUESTIONS.

    An examining magistrate, at the time of a preliminary examina-
    tion on a murder charge, is not required to determine the
    degree of murder; the question of the degree of murder is for
    the trier of the facts.

4. CRIMINAL LAW—MIRANDA WARNINGS—FOCUS OF INVESTIGATION—
   EXCLUSION OF EVIDENCE—EXCULPATORY STATEMENTS—APPEAL
   AND ERROR.

    An investigation had focused upon a defendant, for purposes of

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 21 Am Jur 2d, Criminal Law § 442 *et seq.*
[4] 5 Am Jur 2d, Arrest § 69.
   21 Am Jur 2d, Criminal Law §§ 314, 357, 440 *et seq.*
   29 Am Jur 2d, Evidence §§ 555–557, 611 *et seq.*
   Necessity of informing suspect of rights under privilege against self-
   incrimination, prior to police interrogation. 10 ALR3d 1054.
[5] 75 Am Jur 2d, Trial §§ 303, 304.
[6, 7] 40 Am Jur 2d, Homicide §§ 154, 519, 520.

the *Miranda* doctrine, where at the time an investigating police officer arrived at the murder scene the officer knew that the mobile home in which the homicide occurred belonged to the defendant and the officer was there in response to a call from the defendant in which the defendant stated that she had shot the decedent and the officer observed no one else at the murder scene upon his arrival; therefore, the officer's query of "what happened?" without first complying with the *Miranda* requirements mandates exclusion of the defendant's reply, and it was reversible error to admit evidence of the defendant's statement, even though the statement was exculpatory.

5. CRIMINAL LAW—CLOSING ARGUMENTS—APPEAL AND ERROR.

Allowing a prosecutor, during closing argument in a murder trial, over defense counsel's objection, to refer to the alleged fact that the defendant was living out of wedlock with the decedent at the time of the homicide and to characterize this liaison as "lewd and lascivious cohabitation" constituted reversible error.

6. HOMICIDE—INSTRUCTIONS TO JURY—SELF-DEFENSE—BURDEN OF PROOF—APPEAL AND ERROR.

A trial court's charge to a jury which stated that self-defense did not justify the taking of human life unless the jurors were satisfied that each element of self-defense was present was an improper instruction but did not constitute reversible error where the trial judge balanced this instruction with the instruction that the burden of proof was on the prosecution to disprove self-defense.

7. CRIMINAL LAW—INSTRUCTIONS TO JURY—SELF-DEFENSE—AGGRESSORS—CASE PRECEDENT—APPEAL AND ERROR.

Instructions to the jury stating that an aggressor cannot invoke the doctrine of self-defense unless the defendant was, at the time, in immediate danger of losing her own life or suffering some grievous bodily injury were reversibly erroneous for two reasons: (1) case precedent holding such an instruction to be reversible error per se, and (2) because the record was devoid of any evidence showing that the defendant was ever an aggressor in the affray.

Appeal from Cheboygan, Joseph P. Swallow, J. Submitted October 10, 1975, at Grand Rapids. (Docket No. 22650.) Decided May 17, 1976. Leave to appeal applied for.

Eileen Norwood was convicted of manslaughter. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Edward G. Mc-Namara, Jr.,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Dennis M. Powers,* Special Assistant Attorney General, of counsel), for the people.

*Kenneth A. Webb,* for defendant.

Before: N. J. KAUFMAN, P. J., and R. B. BURNS and G. R. DENEWETH,* JJ.

G. R. DENEWETH, J. On December 13, 1973, the defendant was convicted after a jury trial of the crime of manslaughter. On February 4, 1974, a sentence of not less than 3 nor more than 15 years in the state prison was imposed. It appears that the defendant had been married to the decedent and that even after the divorce the parties maintained a close liaison with each other although they were never remarried. The day on which the decedent was killed, they had been visiting a local bar during the course of which visit an argument developed. Eventually the defendant went to her mobile home, then proceeded back to the bar to pick up the decedent, and returned to her mobile home. Upon arrival at the defendant's mobile home, the decedent became quite angry at what he considered to be a failure on the part of the defendant to open the door quickly enough. He became violent and ripped the door off the hinges. At this point the defendant called the local sheriff's office and informed the deputy who answered

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

the call that there had been trouble between herself and the decedent, and that the trouble was continuing and that serious problems would arise if someone did not come out to her home. The deputy, who had received many earlier false alarms from the defendant, suggested a future call if the fracas continued. Approximately one-half hour later the defendant again called the sheriff's office and informed the deputy that she had just shot the decedent. The deputy immediately went to the trailer and upon his arrival found the decedent lying in a pool of blood at one end thereof and the defendant lying on the other end of the trailer with a pistol still in her hand. Immediately upon entering, the deputy sheriff inquired as to what happened, and the defendant responded that the decedent had been beating her, that they had been arguing and that she found her gun and shot him. At the time the question was asked by the deputy and the answer was given, no *Miranda*[1] warnings had been given to the defendant. The State Police subsequently arrived and they gave the defendant her *Miranda* warnings and then began to question her. The defendant refused further interrogation until she had the opportunity to consult with her attorney and she was removed to a hospital for treatment of the bruises and contusions which were on her body. The decedent was taken to the hospital and pronounced dead on arrival. The defendant was then arraigned on a charge of first-degree murder under the first-degree murder statute, MCLA 750.316; MSA 28.548. The complaint charged the defendant had feloniously and maliciously killed the decedent. After the examination the defendant was bound over to circuit court for trial on an open

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

charge of murder. The information filed in the circuit court charged the defendant with first-degree murder. The defendant filed two motions to dismiss, both of which were denied by the trial judge. After the close of the proofs the trial judge dismissed the charge of first-degree murder and submitted the case to the jury on the charges of second-degree murder, manslaughter or not guilty. The theory under which the defendant proceeded during the trial was that of self-defense. The trial judge gave an instruction on self-defense which he later clarified for the jury, and on the basis of the instructions given and the facts as presented the jury returned a verdict of guilty of manslaughter. The appeal in this case raises four basic questions.

1) Whether or not it was error to bind the defendant over for trial on an open charge of murder. We think not.

2) Whether or not the deputy sheriff's questioning violated the requirements of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). We think it did.

3) Whether or not improper prosecution argument constituted reversible error. We think it did.

4) Whether or not the trial judge erred in the self-defense instructions which he gave the jury. We think he did.

This Court is of the opinion that the conviction must be set aside and the case remanded for a new trial because of the failure on the part of the deputy sheriff to give the *Miranda* warning to the defendant prior to his asking her what happened. This, as well as the other issues raised by the defendant will hereinafter be reviewed in the order in which they were raised.

Issue #1: It is so axiomatic so as not to require citation that the prosecution must establish two

things at the preliminary examination: (1) that the crime with which the defendant has been charged was in fact committed, and (2) that there is reasonable cause to believe that the defendant committed that crime. Absent either element being established, the charges against the defendant must be dismissed at the examination stage. The facts in the instant case present a variation on the question of whether a defendant may be bound over to circuit court on an open charge of murder, and brought to trial on an information charging first-degree murder, where the preliminary examination testimony fails to show premeditation and deliberation. It is our opinion that this question must be answered in the affirmative. The case of *People v Davis,* 343 Mich 348, 355–356; 72 NW2d 269 (1955), sets forth the general proposition that:

"Where a complaint charges that an accused feloniously, wilfully and of malice aforethought did kill and murder, the certification to the circuit court need not specify whether it was first- or second-degree murder."

This principle was further amplified in the case of *People v Strutenski,* 39 Mich App 72; 197 NW2d 296 (1972), where the Court held that the examining magistrate is not, at the time of the preliminary examination, required to determine the degree of murder. "The question of the degree of murder was a question for the trier of the facts—in this case the jury." 39 Mich App at 73.

The defendant in her argument has placed a great deal of emphasis upon the case of the *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973). It is our opinion that the *Allen* case does not apply to the instant situation. That case speaks only to the question of felony murder, a peculiar form of first-degree murder. In the so-called "ordinary first-de-

gree murder case," the corpus delecti is the body of the decedent and the criminal agency of another causing death, both of which facts were abundantly clear in the present case without the necessity of any confession. It may also be said *arguendo* that such a procedure even if it be considered error is harmless in view of the trial judge's instructions to the jury not to consider the question of first-degree murder.

Issue #2: When the sheriff's deputy who had been summoned to the mobile home by the defendant arrived at the scene he inquired as to "what happened?" The defendant's response was that the decedent had been jumping up and down on her when she procured a pistol and killed him. Despite objection the trial court allowed this statement into evidence. Whether or not the deputy's interrogation violated the *Miranda* doctrine of course must turn on whether or not the investigation had yet "focused" upon the defendant. This question must be answered in the affirmative, it being readily apparent that no other interpretation of the facts can be made. The officer knew that the mobile home belonged to the defendant; he had received a phone call from the defendant stating that she had shot the decedent and he observed no one else at the murder scene upon his arrival. It is likewise beyond argument that the defendant's statements to the officer were completely exculpatory in nature. Any attempt to place such statements in the same category as admissions or confessions does mischief to logic and common sense. It is likewise true however that even such exculpatory statements as those in issue here fall within the *Miranda* rule, *supra.* We therefore feel constrained, albeit reluctantly and grudgingly, to follow *Miranda* in holding that even these exculpa-

tory statements must be excluded if taken during custodial interrogation in the absence of a *Miranda* warning prior to the interrogation being commenced. It is plain then that the questioning of the defendant was violative of *Miranda,* and that it was error to admit evidence of the exculpatory statement requiring reversal.

Issue #3: During closing argument to the jury the prosecutor referred to the fact that the defendant was living out of wedlock with the decedent at the time of the homicide, characterizing this liaison as "lewd and lascivious cohabitation". Such language to us connotes a crime under our law and it is our opinion that the denial of the objection to this language in the prosecutor's argument (especially in view of the fact that the record is devoid of any evidence of cohabitation) constituted reversible error, see *People v Adams,* 311 Mich 446; 18 NW2d 888 (1945).

Issue #4: As the Court has pointed out, the defendant's theory of the case revolved around the doctrine of self-defense. The defendant has raised many questions regarding the court's instruction on this issue, only two of which merit discussion. At one point the trial court charged that self-defense did not justify the taking of human life "unless you jurors shall be satisfied from the testimony that each element of self-defense was present". Obviously this instruction is in direct conflict with *People v Jackson,* 390 Mich 621; 212 NW2d 918 (1973). Later, however, the trial judge balanced this instruction with the instruction that the burden of proof was on the prosecution to disprove self-defense. It is not necessary to reach a decision in this case to rule on this question, however, the attention of the trial court is called to the difficulty which this instruction presents

and it is hereby cautioned to clarify the instructions in any subsequent trial because of the possibility of its being misunderstood.

The defendant also alleges that the trial court was in error when it instructed the jury that the aggressor cannot invoke the doctrine of self-defense unless "she was, at the time, in immediate danger of losing her own life or suffering some grievous bodily injury". This instruction appears to have been drawn almost entirely from 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1694, p 2046. The case of *People v Sangster,* 33 Mich App 712; 190 NW2d 317 (1971), has held the giving of this instruction is reversible error per se. Further discussion of this question is required, however, because of language used in the opinion in the case of *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), which case seems to indicate by implication, that circumstances may possibly exist where an aggressor may avail himself of the doctrine of self-defense. However, the Court indicated in that case that the instruction was error since no proof was ever adduced at the trial tending to show that the accused was ever the aggressor. That reasoning appears to be applicable in this case because the record is totally devoid of any evidence that the defendant was ever an aggressor in the fatal affray. For both of these reasons it is this Court's opinion that the trial court did commit reversible error in the instruction which was given.

In reviewing the briefs and the arguments of counsel, this Court must confess that it was utterly amazed at the number of questions of error which were raised on the appeal but which were not preserved by objection and which are, therefore, not considered. While not necessary to the

disposition of this case, we feel that we would be remiss if we did not point out that the bench and bar of this state, as well as justice itself, are ill served by the questionable practice of failing to make timely objections, thus allowing a bad record to be made which it is hoped will create an appellate parachute in case of conviction. We think that procedure should come to an end.

Reversed and remanded for further proceedings consistent with this opinion.

N. J. KAUFMAN, P. J., concurs in result only.