PEOPLE v DIXON

Docket No. 77-373. Submitted May 8, 1978, at Lansing.—Decided July 17, 1978. Leave to appeal applied for.

Richard F. Dixon was convicted in Allegan Circuit Court, George R. Corsiglia, J., of second-degree murder. Defendant appeals alleging the jury was not impartial due to unfavorable pretrial publicity, admission of involuntary statements, and prosecutorial infringement of his right against self-incrimination and his right to remain silent. *Held:*

1. A trial court did not err in failing to order a mistrial on the basis that the jury drawn was not impartial where the defendant produced an affidavit stating that four members of the jury indicated during deliberations that they knew why defendant was a fugitive from justice when he was arrested but where that reason was never revealed or discussed; knowledge of publicity concerning a case does not automatically make a juror unfit to serve if that juror does not have a preconceived opinion concerning the defendant's guilt or innocence which cannot be laid aside.

2. The Court of Appeals is required to review a trial court's determination of the voluntariness of a defendant's statements by examining the whole record and making an independent determination, but where conflicting evidence is introduced and the determination of voluntariness depends to a large extent on the credibility of the witnesses at the hearing, deference will be given to the findings of the trial court and the trial court's determination will not be disturbed unless the Court of Appeals is left with a definite and firm conviction that a mistake was made.

3. Evidence of flight is relevant, material and admissible and

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d Criminal Law §§ 427, 428.

[2] 21 Am Jur 2d, Criminal Law § 426.
    Pretrial publicity in criminal case as affecting defendant's right to fair trial. 10 L Ed 2d 1243.

[3] 76 Am Jur 2d Trial §§ 1081, 1082.

[4] [No Reference]

[5, 6] 75 Am Jur 2d, Trial § 242.

[6] 75 Am Jur 2d, Trial § 221.

the prosecutor is permitted to comment upon it and draw reasonable inferences from it; flight is not an assertion of the right against self-incrimination and the right to remain silent.

4. Testimony by a police officer that after arrest the defendant did not say anything or talked in a very low voice, but that later he answered or offered to answer their questions was harmless error when it was not deliberately injected into the proceedings by the prosecutor for the purpose of using the defendant's silence against him, and where a review of the evidence presented to the jury indicates that there was no reasonable possibility that this testimony regarding defendant's silence at his arrest contributed to his conviction.

Affirmed.

1. CRIMINAL LAW—VENUE—DISCRETION—APPEAL AND ERROR.

The grant or denial of a motion for a change of venue is within the discretion of the trial judge and, absent clear abuse of discretion, his decision will not be overturned.

2. CRIMINAL LAW—VENUE—PRETRIAL PUBLICITY—BURDEN OF PROOF.

The existence of publicity and some newspaper articles about a criminal case and the fact that some jurors may have read or heard about the case from the publicity does not necessarily require a change of venue and the burden is on the defendant to show undue influence or that the jurors had a preconceived opinion.

3. JURY—IMPARTIAL JURY—PRETRIAL PUBLICITY—JUROR KNOWLEDGE OF PUBLICITY—MISTRIAL.

A mistrial on the basis that the jury drawn was not impartial was properly denied where the defendant produced an affidavit stating that four members of the jury indicated during deliberations that they knew why defendant was a fugitive from justice when he was arrested but where that reason was never revealed or discussed; knowledge of publicity concerning a case does not automatically make a juror unfit to serve if that juror does not have a preconceived opinion concerning the defendant's guilt or innocence which cannot be laid aside (MCL 768.10; MSA 28.1033).

4. CRIMINAL LAW—STATEMENTS OF DEFENDANT—VOLUNTARINESS—APPEAL AND ERROR—COURT RULES.

The Court of Appeals is required to review a trial court's determination of the voluntariness of a defendant's statements by examining the whole record and making an independent determination, but where conflicting evidence is introduced and the

determination of voluntariness depends to a large extent on the credibility of the witnesses at the hearing, deference will be given to the findings of the trial court and the trial court's determination will not be disturbed unless the Court of Appeals is left with a definite and firm conviction that a mistake was made (GCR 1963, 517.1).

5. Criminal Law—Right Against Self-Incrimination—Right to Remain Silent—Flight—Prosecutorial Comment.

Evidence of flight in a criminal case is relevant, material and admissible and the prosecutor is permitted to comment upon it and draw reasonable inferences from it; flight is not an assertion of the right against self-incrimination and the right to remain silent.

6. Criminal Law—Evidence of Defendant's Silence at Arrest—Harmless Error.

Testimony by a police officer that after arrest the defendant did not say anything or talked in a very low voice but that later he answered or offered to answer questions was harmless error when it was not deliberately injected into the proceedings by the prosecutor for the purpose of using the defendant's silence against him and where a review of the evidence presented to the jury indicates that there was no reasonable possibility that this testimony regarding defendant's silence at his arrest contributed to his conviction.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Fred R. Hunter, III,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, Prosecuting Attorneys Appellate Service, for the people.

*Janet Tooley,* Assistant State Appellate Defender, for the defendant on appeal.

Before: Beasley, P. J., and Allen and H. E. Deming,* JJ.

H. E. Deming, J. On July 27, 1976, defendant was convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549, and was sentenced to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

life imprisonment. This prosecution arose out of the fatal shooting of a police officer on January 9, 1976. Defendant admitted shooting the officer but claimed that he acted in self-defense.

The first issue raised by defendant concerns the effect of pretrial publicity on his right to trial by an impartial jury, US Const, Am VI. The circumstances surrounding this case generated newspaper articles on the crime, the defendant, and the fact that, at the time of the shooting, defendant was sought by Federal authorities on an indictment arising out of an airplane hijacking. Prior to the selection of the jury defendant made a motion for a change of venue on the basis of this pretrial publicity but the judge reserved judgment on this motion until an attempt was made to impanel an impartial jury, see *People v Jenkins,* 10 Mich App 257; 159 NW2d 225 (1968), *People v Dailey,* 6 Mich App 99; 148 NW2d 209 (1967). Voir dire was very extensive, lasted eight days and occupied over 1,500 pages of transcript. Of the 89 prospective jurors examined, many remembered being exposed to the news media's coverage of this case. Each juror who had formed an opinion about the case and who did not think that he could set that opinion aside and render a verdict solely on the evidence introduced at trial was excused, MCL 768.10; MSA 28.1033. Each prospective juror who had any knowledge of the hijacking charge was challenged for cause and all but two of these jurors were excused. During the voir dire, the trial judge denied defendant's motion for a change of venue and he also denied defendant's later motions for a change of venue.

The decision to grant or deny a motion for a change of venue is entrusted to the discretion of the trial judge and his decision will not be re-

versed absent a clear abuse of discretion, *People v Nard,* 78 Mich App 365; 260 NW2d 98 (1977). The burden is on defendant to show undue influence or that the jurors had a preconceived opinion, *People v Nard, supra, People v Ranes,* 63 Mich App 498; 234 NW2d 673 (1975). The existence of publicity and some newspaper articles about a criminal case and the fact that some jurors may have read or heard about the case from this publicity does not necessarily require a change of venue, *People v Ranes, supra, People v Jenkins, supra.* There is no evidence of a strong community feeling or a pattern of bitter prejudice against the accused that would indicate that an impartial jury could not be drawn; see *People v Eddington,* 77 Mich App 177; 258 NW2d 183 (1977). *People v Freeman,* 16 Mich App 63; 167 NW2d 810 (1969), *People v Jenkins, supra.* This is not a case like *Rideau v Louisiana,* 373 US 723; 83 S Ct 1417; 10 L Ed 2d 663 (1963), or *Sheppard v Maxwell,* 384 US 333; 86 S Ct 1507; 16 L Ed 2d 600 (1966), in which the pretrial publicity was so extensive, inflammatory and patently prejudicial that it raised a presumption that prospective jurors could not remain impartial when exposed to it. All the jurors who were seated stated that they could set aside any opinion they might have of the case and determine their verdict solely on the evidence introduced at trial. Also a review of the evidence introduced at trial indicates that the jury could have found defendant guilty beyond a reasonable doubt of first-degree murder. Since the jury returned a verdict of guilty of second-degree murder and acquitted defendant on the first-degree murder charge, it is obvious to us that the jury independently and impartially weighed the evidence in reaching its determination; see *People v Eddington, supra.* The defendant has not shown the trial judge abused his discretion

in denying the motion for a change of venue; see *People v Hoffmeister,* 52 Mich App 219; 217 NW2d 58 (1974), *rev'd and remanded on other grounds,* 394 Mich 155; 229 NW2d 305 (1975), *reh den,* 394 Mich 944; 230 NW2d 270 (1975), *People v Freeman, supra, People v Jenkins, supra.*

Defendant also claims that the trial court erred in denying his motion for a mistrial on the basis that the jury drawn was not impartial. Nine of the twelve jurors who ultimately decided the case had been exposed to some pretrial publicity. Two jurors stated on voir dire that they had heard of the hijacking incident. In support of this motion for a mistrial, defendant introduced an affidavit by the jury foreperson stating that four members of the jury said, during deliberations, that they knew why defendant was a fugitive from justice when he was arrested. However, this reason was never disclosed to the rest of the jury or discussed by the jury. Knowledge of publicity concerning a case does not automatically make a juror unfit to serve if that juror does not have a preconceived opinion concerning the defendant's guilt or innocence which cannot be laid aside, MCL 768.10; MSA 28.1033. All the prospective jurors who stated that they had a preconceived opinion which they could not set aside were excused. The trial judge conducted a very thorough voir dire examination and he repeatedly warned the jurors to avoid exposing themselves to any discussions or media reports about the case. Defendant has not shown that any juror had an opinion of the case which prevented him from rendering an impartial verdict according to the evidence submitted to the jury at trial. Also, defendant has not shown any juror misconduct requiring reversal. The affidavit from the foreperson that four jurors said in the jury room that

they were aware of why defendant was a fugitive does not require reversal. The reason why defendant was a fugitive was not disclosed to the rest of the jury, considered, or discussed. This fact distinguishes *People v Moreland,* 12 Mich App 483; 163 NW2d 257 (1968), where inadmissible evidence of prior convictions came to the jury's attention during trial and was discussed and considered by the jury in deliberating on a verdict. The trial judge did not err by failing to order a mistrial.

Defendant also claims that it was reversible error to admit into evidence some statements that defendant made to the police because these statements were involuntary. The statements in question were made following defendant's arrest and after defendant had been advised of his *Miranda*[1] rights. A *Walker*[2] hearing was conducted and after this hearing, the trial judge found the defendant's statements to be voluntary and admissible. On appeal from a trial court's determination of voluntariness, this Court is required to examine the whole record and make an independent determination of voluntariness, *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). When conflicting evidence is introduced and the determination of voluntariness depends to a large extent on the credibility of the witnesses at the hearing, deference will be given to the findings of the trial court, *People v Smith,* 80 Mich App 106; 263 NW2d 306 (1977); see also GCR 1963, 517.1. If after such a review, this Court does not possess a definite and firm conviction that a mistake was committed, the trial judge's determination will be affirmed, *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

(1974). After a review of the record, we are not left with a firm and definite conviction that a mistake was committed and so defendant's claim of error does not justify reversal, *People v Smith, supra.*

Defendant's third claim on appeal is that it was reversible error for the prosecutor to introduce testimony and to make references during his closing argument which infringed on defendant's right against self-incrimination, US Const, Am V, Const 1963, art 1, § 17, *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). During his closing argument, the prosecutor referred to the fact that when a second police officer arrived on the scene of the shooting, the defendant fled. The prosecutor urged the jury to infer from this fact that defendant murdered the victim rather than acting in self-defense. Evidence of flight is relevant, material and admissible, *People v Kyles,* 40 Mich App 357, 360; 198 NW2d 732 (1972). The prosecutor is entitled to comment on this evidence and draw reasonable inferences from it. The admission of evidence of flight from police officers does not infringe on a defendant's right against self-incrimination. Flight is not an assertion of the right against self-incrimination and one's right to remain silent does not encompass the right to flee from law enforcement officers performing their official duties. The prosecutor's reference during his closing argument to defendant's flight from the scene does not violate the proscriptions enunciated in *Bobo, supra.*

A related *Bobo, supra,* issue raised by defendant involves the admission of testimony from some of the police officers present at defendant's arrest concerning whether the defendant might have made any statements at that time. These officers testified that after defendant was informed of his *Miranda* rights, the officers asked him some ques-

tions. More specifically, the officers asked the defendant where the gun used in the shooting was, what his name was, and why he had shot the victim. The officers testified that initially defendant did not say anything or talked in a very low voice but that later he answered or offered to answer all these questions for the police. The admission of this evidence clearly violates the proscriptions stated in *Bobo, supra.* However, plaintiff contends that any error in this case was harmless and does not justify reversal. The test to determine whether a *Bobo* error was harmless is set out in *People v Swan,* 56 Mich App 22, 31; 223 NW2d 346 (1974).

On the facts involved in this case, these fleeting references to defendant's silence at arrest were not so offensive to the maintenance of a sound judicial process that they can never be regarded as harmless; see *People v Swan, supra.* Although the testimony was not unresponsive to the prosecutor's questions, it was not deliberately injected into the proceedings by the prosecutor for the purpose of using such silence against defendant. The testimony was given by the officers as an explanation of their actions which culminated in defendant making some inculpatory statements to them. Shortly after defendant's initial silence, he answered the questions asked by the police offering to show them where he disposed of the gun and identifying himself as "Mamashay". Although some recent decisions by this Court have resolved this "harmless error" issue in favor of the defendant by finding that any reference to defendant's silence is offensive to the maintenance of a sound judicial process, *People v Hoye,* 80 Mich App 258; 263 NW2d 343 (1977), the fleeting references to defendant's silence in this case were not so offen-

sive that they require reversal under the first prong of the *Swan, supra,* harmless error test.

The next issue under the harmless error test is "whether there is a reasonable possibility that the evidence complained of might have * * * aided in convincing an otherwise undecided juror of the defendant's guilt beyond a reasonable doubt", *People v Swan, supra,* at 33, *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). The purpose of this requirement is to safeguard the defendant's right to be convicted only by a jury and only upon a finding of guilty beyond a reasonable doubt. A review of the evidence presented to the jury indicates that there is no reasonable possibility that this testimony regarding defendant's silence at his arrest contributed to his conviction. Defendant's later admissions of incriminating statements made it clear that he had something to hide at his arrest and rendered any similar implications from his silence at arrest merely cumulative, *Swan, supra.* Defendant admitted shooting the officer with a gun and also offered to help the police find the weapon. His admissions at the police station also clearly indicated that he had a reason to hide his identity. This subsequent cooperation with the police no doubt removed any inclination that the jury might have to penalize the defendant for having an uncooperative attitude; see *People v Swan, supra.* These admissions by the defendant effectively removed the possibility that the jury might have made inculpatory inferences in relation to the questions defendant did not answer at his arrest. The weight and nature of the other evidence against defendant made the error in this case harmless beyond a reasonable doubt.

The remaining issues raised by defendant do not

warrant discussion or reversal. The admission of rebuttal evidence is within the discretion of the trial judge, *People v Utter,* 217 Mich 74; 185 NW 830 (1921), and the trial judge did not abuse his discretion. Defendant did not object to the jury instructions given by the judge and so reversal is not warranted unless manifest injustice resulted, *People v Harless,* 78 Mich App 745; 261 NW2d 41 (1977), *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977). No manifest injustice resulted from these instructions.

Affirmed.