## PEOPLE v GERMAIN

Docket No. 78-172. Submitted March 19, 1979, at Detroit.—Decided
July 9, 1979. Leave to appeal applied for.

Defendant, Edward J. Germain, was convicted of first-degree
murder in the Chippewa Circuit Court, Nicholas J. Lambros, J.,
in the shooting death of his girlfriend. On the night of the
shooting the police received a call from a male who identified
himself as defendant and informed them that he had just shot
someone in his trailer home, that he was going to shoot himself
and that they should send someone over. Officers were dis-
patched and, when they arrived, found defendant's girlfriend
lying dead of a gunshot wound and defendant, also suffering a
gunshot wound, lying on top of her. When questioned, defen-
dant replied that he had shot his girlfriend and then himself.
Later, during his convalescence at a hospital, he was guarded
by a police officer to whom he volunteered certain inculpatory
statements without first being given Miranda warnings. Defen-
dant appeals alleging that the trial court erred in failing to
instruct the jury on the elements of voluntary and involuntary
manslaughter and in failing to suppress his statements to the
guard because no Miranda warnings were given and because he
was rendered incapacitated by the effects of heavy medication.
He also contends that the prosecution failed to produce suffi-
cient evidence, independent of his extrajudicial confession, to
establish premeditation and deliberation. Held:

1. Even though defendant requested an instruction on volun-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 891.
   75 Am Jur 2d, Trial § 906.
[2, 6] 40 Am Jur 2d, Homicide §§ 525, 561.
[3] 29 Am Jur 2d, Evidence § 555.
[4] 40 Am Jur 2d, Homicide §§ 454, 455.
[5] 40 Am Jur 2d, Homicide §§ 263-267.
Homicide: presumption of deliberation or premeditation from the
   fact of killing. 86 ALR2d 656.
Homicide: presumption of deliberation or premeditation from the
   circumstances attending the killing. 96 ALR2d 1435.

tary manslaughter, he raised no objection when the jury was charged and, thus, waived the issue on appeal.

2. Because the jury was twice instructed on the elements of first- and second-degree murder and convicted the defendant of first-degree murder, contrary to the logical result had there been doubt as to the seriousness of defendant's mental state, failure to instruct the jury on involuntary manslaughter was harmless error, even though the proofs adduced would have supported a conviction.

3. Voluntary statements made by a defendant to a police officer who was guarding him subsequent to arrest do not come within the purview of the *Miranda* rule.

4. The prosecutor must, to establish the corpus delicti of first-degree murder, introduce evidence of each element, including premeditation and deliberation, independent of the defendant's extrajudicial confession. There was insufficient independent evidence of premeditation and deliberation to convict defendant of first-degree murder.

Conviction of first-degree murder vacated and case remanded for entry of judgment of second-degree murder and for resentencing.

M. J. KELLY, J., dissented. He would hold that the requested manslaughter instructions should have been given because there was sufficient evidence to support such instructions. He would reverse.

### OPINION OF THE COURT

1. APPEAL AND ERROR — INSTRUCTIONS TO JURY — FAILURE TO OBJECT.

Failure to object to the omission of a requested jury instruction following the judge's instructions to the jury waives the issue for review.

2. HOMICIDE — INSTRUCTIONS TO JURY — INVOLUNTARY MANSLAUGHTER — APPEAL AND ERROR — HARMLESS ERROR.

A trial court's failure to give a jury instruction on involuntary manslaughter when the proofs would have supported a conviction was harmless error where the jury was twice instructed on the elements of first- and second-degree murder and convicted the defendant of first-degree murder, contrary to the logical result had there been doubt as to the seriousness of defendant's mental state.

3. Criminal Law — Evidence — Voluntary Statements — *Miranda* Rule.

Voluntary statements made by a defendant to a police officer who was guarding him subsequent to arrest do not come within the purview of the *Miranda* rule.

4. Homicide — First-Degree Murder — Evidence — Extrajudicial Confessions — Premeditation and Deliberation.

The prosecutor must, to establish the corpus delicti of first-degree murder, introduce evidence of each element, including premeditation and deliberation, independent of the defendant's extrajudicial confession.

5. Homicide — Evidence — Premeditation and Deliberation — Inferences.

Premeditation and deliberation may be inferred by the surrounding circumstances including prior relationships tending to show motive, a murder weapon acquired and positioned in preparation for homicide, evidence in the record supporting the inference that the killer transported the victim to a secluded location for an illicit or criminal purpose, circumstances surrounding the killing suggesting premeditation and deliberation, and organized conduct subsequent to the killing suggesting the existence of a plan.

Dissent by M. J. Kelly, J.

6. Homicide — Instructions to Jury — Involuntary Manslaughter — Appeal and Error.

*Failure of a trial court in a murder trial to give a requested jury instruction on involuntary manslaughter is reversible error where the evidence adduced at trial was sufficient to support a conviction of involuntary manslaughter despite the fact that the jury convicted the defendant of first-degree murder.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Farrell E. Elliott,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Thomas C. Nelson,* of counsel), for the people.

*Ronald J. Bretz,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. C. RILEY, P.J., and M. J. KELLY and BEASLEY, JJ.

D. C. RILEY, P.J. On October 6, 1977, defendant was convicted by a jury of first-degree murder, contrary to MCL 750.316; MSA 28.548, in the shooting death of his girlfriend. He was sentenced to life imprisonment, appeals by right, and poses four allegations of error, two of which contain merit.

The background facts as pertinent to the issues on appeal reveal that on the evening of March 25, 1977, Lt. Robert Clary of the Sault Ste. Marie police department received a call at headquarters around 11:43 p.m. from a male identifying himself as Ed Germain. The caller asserted that he had just shot someone in his trailer home, that he was going to shoot himself, and that Clary had better send someone. The lieutenant promptly dispatched two cars to the given address. Following their arrival, the officers entered the trailer and found defendant's girlfriend lying dead of a gunshot wound on the bed. Defendant, himself shot in the chest, was lying on top of her. When questioned by one of the officers as to what happened, defendant replied that he had shot his girlfriend, Lillian TenEyck, and then shot himself. Defendant was taken to a hospital, where, following surgery, he convalesced for approximately a three-week period. During that time he was guarded in part by Deputy Sheriff Michael Baker. At both the preliminary examination and trial, Baker ascribed to defendant certain allegedly volunteered statements, given without benefit of *Miranda* warnings, which included defendant's own inculpatory account of the event in issue. Defendant's motion to suppress these statements was answered by a *Walker* hearing at which the lower court ruled

them admissible as voluntary statements "made without being questioned".

Other facts are provided insofar as they are necessary to a resolution of the issues raised on appeal.

Defendant first alleges that the trial court erred in failing to instruct the jury on the elements of both voluntary and involuntary manslaughter. With respect to the former, although defendant submitted to the court a proposed instruction, no objection was proffered to its omission when the court inquired as to whether counsel was satisfied with the intended charge. The failure to so object waives appellate consideration. *People v Dixon,* 84 Mich App 675, 685; 270 NW2d 488 (1978), *People v Harless,* 78 Mich App 745; 261 NW2d 41 (1977), *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977), *lv den* 402 Mich 909 (1978). However, proper exception was taken to the trial judge's failure to instruct on involuntary manslaughter. MCL 750.329; MSA 28.561 defines that offense as follows:

> "Any person who shall wound, maim or injure any other person by the discharge of any firearm, pointed or aimed, intentionally but without malice, at any such person, shall, if death ensue from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter."

The court denied defendant's request because there was no testimony adduced from which an affirmative showing could be made of defendant's state of mind. In *People v Doss,* 406 Mich 90, 98, n 3; 276 NW2d 9 (1979), the Court recognized the elements of involuntary manslaughter as defined in the applicable standard Criminal Jury Instruction:

"(1) That the deceased died on or about a date;

"(2) That the death was caused by an act of the defendant;

"(3) That the defendant caused the death without lawful justification or excuse;

"(4) That the death resulted from the discharge of a firearm;

"(5) That at the time of such discharge, the defendant was pointing or aiming the firearm at the deceased; and

"(6) That at the time of such discharge, the defendant intended to point or aim the firearm at the deceased." CJI 16:4:06.

Thus, the only proof necessary to support the charge, which the prosecution concedes was in evidence in the present case, was that defendant intentionally pointed the gun at TenEyck and that she died as a result of the subsequent discharge of the firearm. Defendant was therefore entitled to the instruction. *People v Van Wyck,* 402 Mich 266, 269-270; 262 NW2d 638 (1978).

Nevertheless, despite the court's failure to give the requested charge, reversal of defendant's conviction is not compulsory on this ground. The jury was twice instructed as to the elements of both first- and second-degree murder and convicted defendant of the higher charge, contrary to the logical result had there been doubt as to the seriousness of defendant's mental state. The trial judge's omission, therefore, was harmless. *People v Gerald Hughes,* 85 Mich App 8, 13; 270 NW2d 692 (1978), *People v Richardson,* 77 Mich App 411, 421-422; 258 NW2d 741 (1977).

Defendant next maintains that the trial court abused its discretion in refusing to suppress defendant's statements given Deputy Baker concerning the events of the night in question.

At the *Walker* hearing, Deputy Baker's prelimi-

nary examination testimony was admitted by both parties to establish the circumstances surrounding the making of defendant's purportedly involuntary declarations:

"A. [DEPUTY BAKER.] Approximately 9:15, if I remember correctly, Mr. Germain had asked me if I would crank his bed up. This I did. And afterwards I returned to my chair and was reading the paper when he started talking. He asked me, you know, if I would mind him talking. I said, 'No' and continued to read the paper.

"At this point, he started talking about, apparently, what had happened the night of the shooting. He made reference to that he had some problems. He and Miss TenEyck were not getting along, she had been nagging for the last six months. He had come home that evening, and he made reference that he had four cans of beer in his refrigerator and she had drank three, prior to his arriving home, and he had drank the other one.

"At which I just nodded and, I believe, once I acknowledged that I was listening to him. He continued to state that they had gone out that night and she had been giving him a hard time nagging. I believe he said the last six months, and upon returning home she continued to keep this nagging up, apparently at which he, if I remember correctly, the quote was he told her, '[s]hut your mouth bitch'. He stated he had slapped her on the side of the head, at which time he held his fist up. I presume showing what he used to do it with.

"At this point, Mr. Germain stated she continued to keep nagging at. him, at which time he slapped her along the other side of the head and he said that he could tell that he had hit her pretty hard, I believe was his words, because her eyes were swelling up on both sides of her head.

"At this point, as I recall, Mr. Germain stated he said, '[o]kay, I'll show you', and he said he went and got the shotgun. Prior to this he said he threw her on the bed. He didn't state which room this was, which bedroom this was, but he stated he had thrown her on the

bed and then stated, 'I'll show you' and he said he went and got the shotgun and shot her.

"Q. [PROSECUTING ATTORNEY.] Had you asked him any questions at all?

"A. No, sir. We had talked earlier in the day but nothing in regards to what had happened that night.

"Q. Was this your only participation in this case, that of guard duty?

"A. Yes, sir.

"Q. You were not an investigating officer or anything of that nature. Is that correct?

"A. No, sir.

The trial court ruled that defendant's statements were freely given and not the result of coercion. On appeal, we reexamine the entire record in order to reach an independent determination. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972), *People v Dixon, supra,* 681, *People v Smith,* 80 Mich App 106, 111; 263 NW2d 306 (1977). In so doing we are led to the same conclusion as that of the lower court.

Defendant acknowledges that Deputy Baker never expressly questioned him, but argues that Baker's consent to defendant's desire to continue talking constituted an invitation to speak amounting to an implicit interrogation. Defendant's attempt to come within the confines of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), is without merit. *Miranda* proscribes the use of compelled statements derivative of "custodial interrogation" which the Court defined as *"questioning initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way". (Emphasis supplied.) 384 US 436, 444.

Michigan courts have consistently held that

spontaneous declarations by in-custody defendants do not fall within the purview of *Miranda, supra.* *People v Terry,* 86 Mich App 64, 67-68; 272 NW2d 198 (1978), *People v Nard,* 78 Mich App 365, 377-378; 260 NW2d 98 (1977), *People v Leffew,* 58 Mich App 533, 535-536; 228 NW2d 449 (1975), *People v Moore,* 51 Mich App 48, 51; 214 NW2d 548 (1974). In the instant case, Deputy Baker's sole duty was to guard the defendant. He was not otherwise involved in the investigation of defendant's alleged crime. At no time during the rendition did the officer ever question defendant as to the events which the latter had recounted. Baker's testimony was that defendant asked his permission to talk before defendant broached the subject of the shooting. Only after Baker casually assented did defendant launch into his account. Defendant cannot argue in this situation that Baker had a duty to stop defendant, and inform him of his *Miranda* rights before defendant could continue a spontaneously uttered statement which Baker had not anticipated, requested or encouraged.

Defendant additionally claims that he was rendered incapacitated by the effects of heavy medication, and that it was error not to hold defendant's narrative involuntary on that basis. At the *Walker* hearing, defendant maintained that he had no memory of the disputed conversation with Deputy Baker, although he did remember the officer's presence. The transcript reveals that defendant was not heavily bandaged, but was attached to various life support devices in the hospital's intensive care unit. Otherwise, as the prosecution carefully notes, the record is devoid of any other testimony relating to defendant's physical or mental condition, or whatever medications he may

have been ingesting, and their effect.[1] Conversely, Deputy Baker declared that he participated in other, more mundane conversations with defendant, and that defendant was responsive and sounded coherent. Baker further remarked that defendant seemed quite physically active, and that he persisted in wanting to get up. Thus, in the absence of any proffered evidence which would characterize defendant's condition or reasoning processes as incapacitated, we are not constrained to overturn the lower court's ruling.

Finally, defendant contends that the prosecution failed to produce sufficient evidence at trial to establish premeditation and deliberation distinct from defendant's extrajudicial confession, thereby requiring reversal of his conviction for first-degree murder. In *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), the Michigan Supreme Court adopted the dissenting opinion in this Court of Judge (now Justice) LEVIN, which held that, in order to establish the corpus delicti of first-degree murder, the prosecutor must introduce evidence of each element of the crime, including premeditation and deliberation, independent of a defendant's extrajudicial confession. *People v Allen,* 39 Mich App 483, 494-506; 197 NW2d 874 (1972) (LEVIN, J., dissenting).

At this juncture we note that the Court of Appeals has split as to the breadth of the *Allen* holding, which itself was promulgated in the context of felony murder. *Allen* has been held to apply only to the element of an underlying felony, requiring proof independent of a defendant's confession in felony-murder situations, and not to the

---

[1] Hospital records appended to defendant's appellate brief were not made part of the record below, and therefore may not properly be considered by this Court. *Dora v Lesinski,* 351 Mich 579, 581; 88 NW2d 592 (1958).

elements of premeditation and deliberation required for other first-degree murder. *E.g., People v Norwood,* 68 Mich App 730, 735-736; 243 NW2d 719 (1976), *lv den* 397 Mich 884 (1976), *People v Sparks,* 53 Mich App 452, 458-459; 220 NW2d 153 (1974), *lv den* 393 Mich 135 (1974). However, this result ignores the following language in *Allen:*

"Just as the people must establish with evidence the essential element distinguishing second-degree murder from first-degree murder in order to convict an accused person of the aggravated offense, so, too, in order to prove the *corpus delicti,* that distinguishing element must be established by evidence independent of the accused person's confession. Otherwise the policy underlying the rule requiring that *all* the elements of the offense be established independently of a confession—consistently enforced in many Michigan cases—would be eroded in the category of cases where the stakes are the highest, where the accused person has the most to lose and where one would think that the law would be the most solicitous of his rights." (Emphasis in original. Footnote omitted.) 39 Mich App 483, 503-504.

Other opinions have, we believe correctly, refuted the reasoning in *Norwood* and *Sparks* and applied the *Allen* corpus delicti rule to all first-degree murder. *People v Wells,* 87 Mich App 402; 274 NW2d 797 (1978), *People v Hawkins,* 80 Mich App 481; 264 NW2d 33 (1978). See also *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976), *lv den* 397 Mich 848 (1976), *People v Juniel,* 62 Mich App 529, 536, n 3; 233 NW2d 635 (1975), *lv den* 396 Mich 811 (1976). We choose to follow those decisions in the case at bar.

Defendant argues that the only evidence of premeditation and deliberation introduced by the prosecution derived from defendant's purported statements to Deputy Baker. Defendant accurately

notes that no other direct evidence was introduced as to the character of defendant's intent at issue.

However, the components of premeditation and deliberation need not be established by direct evidence, but may be inferred from the surrounding circumstances provided such inference originates from an adequate basis in record evidence. *People v Hoffmeister,* 394 Mich 155, 158-159; 229 NW2d 305 (1975), *People v Berthiaume,* 59 Mich App 451; 229 NW2d 497 (1975), *lv den* 394 Mich 788 (1975). Such factors from which those elements may be inferred include prior relationship tending to show motive, a murder weapon acquired and positioned in preparation for homicide, evidence in the record supporting the inference that the killer transported the victim to a secluded location for an illicit or criminal purpose, circumstances surrounding the killing suggesting premeditation and deliberation, and organized conduct subsequent to the killing suggesting the existence of a plan. *People v Meier,* 47 Mich App 179, 184-185; 209 NW2d 311 (1973), *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971). Such factors, of course, are not exclusive.

In the instant case, there was evidence suggesting that TenEyck and defendant had a quarrelsome, troubled relationship, and that their relationship had in fact deteriorated so much as to cause TenEyck to renege on their wedding plans. There was no evidence indicating that defendant had ever previously displayed physical violence toward TenEyck. Although evidence of prior animosity between defendant and TenEyck may raise a slight inference of motivation, the prosecution did not introduce any particular reason for the shooting itself, absent defendant's confession. Thus, the existence of prior ill will does not estab-

lish that defendant premeditated homicide pursuant to that motive on the night in question.

The prosecution further introduced no evidence as to how much time had elapsed between defendant's decision to pick up the gun and the act of shooting, or between the decision to shoot and the act, or how far defendant had to move to reach the gun. The mere fact that he used a lethal weapon is not sufficient to establish premeditation and deliberation. *People v Hoffmeister, supra,* 160.

The crux of the prosecutor's argument focuses upon the assertion that there was evidence from which one could reasonably infer that defendant called the police prior to shooting TenEyck and not afterwards, thus indicating that he premeditated the homicide. As previously noted, Sergeant Clary testified that he had received a call from a man identifying himself as defendant at approximately 11:43 p.m. The man indicated that he had already shot someone and was going to shoot himself. Allen Archer, an employee of the U.S. Coast Guard, testified that he pulled into the parking lot of the trailer court at "just about 11:50 [p.m.]". Archer shut the car off, and heard a sound resembling a gunshot. He turned to his girlfriend, who agreed that it sounded like a gun. After both exited from the car, Archer walked to the other side to lock the door and heard the second shot. The prosecutor places great emphasis on the ostensibly short interval between the first and second shots, and maintains that if one were to accept Archer's account, defendant would have had insufficient time to call the police in between the shots.

Viewing the evidence in the light most favorable to the prosecution, *People v Berthiaume, supra,* 456, we remain unconvinced that Archer's testimony was sufficiently precise to allow a reasonable

inference that defendant premeditated the homicide. The time of the initial discharge was an approximation, and the record is lacking in any definite manifestation as to the separation of time interjacent the first and second gunshots. There is no evidence from which to infer the length of time expended in asking his girlfriend's opinion of the noise, or how soon afterwards Archer decided to leave the automobile.

Since, however, the jury found defendant guilty of first-degree murder, it necessarily concluded that defendant acted with malice. As it was undisputed that defendant killed TenEyck, the jury was permitted to infer that element, *People v Morrin, supra,* 323.

Defendant's conviction for first-degree murder is therefore vacated and the case remanded for entry of judgment of second-degree murder and resentencing. *People v Hoffmeister, supra,* 162-163, *People v Bargy,* 71 Mich App 609, 614; 248 NW2d 636 (1976).

BEASLEY, J., concurred.

M. J. KELLY, J. *(dissenting).* It would appear that the formidable theses in *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971), and *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975), are still good law,[1] and therefore I agree with the majority opinion that a case of first-degree premeditated murder is not made out on this record. While the court has retreated slightly from some of Justice LEVIN's views as expressed in *Morrin* and *Hoffmeister* in *People v Tilley,* 405 Mich 38; 273 NW2d 471 (1979), the majority opinion there appears

---

[1] The law being what the Supreme Court says it is.

grounded on the second look—second thought rationale of *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), and cited a *Hoffmeister* passage with approval:

"We recognize that '[s]ome time span between initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation', *People v Hoffmeister,* 394 Mich 155, 161; 229 NW2d 305 (1975). The jury had evidence to support the conclusion that the defendant had ample opportunity to premeditate and deliberate." 405 Mich 38, 45-46.

We do not have such evidence here. Consequently I believe the majority is correct that there was no sufficient evidence to go to the jury on the count of first-degree premeditated murder.

But in threading my way through the legal thicket of manslaughter cases, most of which are cited by the majority, I arrive at the opinion that the requested manslaughter instruction should have been given because there was sufficient evidence to support such an instruction, both on voluntary manslaughter and on involuntary manslaughter, and for that reason I would reverse. In *People v Van Wyck,* 402 Mich 266; 262 NW2d 638 (1978), the Supreme Court held that although manslaughter is not a necessarily lesser included offense of murder, a requested manslaughter instruction should be given if there is sufficient evidence to support a conviction of manslaughter. On remand our Court held that while the *Van Wyck* record did not conclusively establish mitigating circumstances, neither did it clearly establish a lack of passion and that even slight evidence of mitigation was sufficient to frame a jury question. *People v Van Wyck (On Remand),* 83 Mich App 581; 269 NW2d 233 (1978).

Here we have, it seems to me, sufficient evidence

of intoxication[2] to support a charge of involuntary manslaughter and enough, though slight, evidence of mitigating circumstances to warrant a charge on voluntary manslaughter.[3] Since, in my view, both charges were supported and failure to give either one requires reversal, I do not address the question of waiver by the defense attorney's failure to object to the court's refusal to give his requested instruction on voluntary manslaughter.

I would reverse.

---

[2] He drank every day and sometimes lost his memory as a result. He had been drinking all the night of the killing and did not remember leaving the party according to his testimony.

[3] Again in favorable light, she'd nagged him for months and had been "chasing other guys".